J-A20044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| EDWARD YALE, | : | |
| | : | |
| Appellee | : | No. 178 EDA 2014 |

Appeal from the Order entered on January 8, 2014
in the Court of Common Pleas of Monroe County,
Criminal Division, No. CP-45-CR-0001540-2013

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:             **FILED DECEMBER 23, 2014**

The Commonwealth of Pennsylvania appeals from the Order granting Edward Yale's ("Yale") Motion *In Limine* precluding the introduction of statements and writings of the victim, Joan Yale ("Joan"), and potentially limiting the photographs of the crime scene.  We affirm in part and reverse in part.

On March 22, 2001, Joan died in the residence she shared with her husband, Yale.  Yale called the police and told them that Joan had fallen down the steps.  The police observed that Joan had received deep lacerations, bruising, and scrapes to her face.  Yale told the police that only he and Joan were present in the residence at the time of her death.

In April 2013, a Monroe County Investigating Grand Jury recommended that criminal charges be filed against Yale.  Yale was

subsequently charged with criminal homicide and tampering with physical evidence.[1] On September 24, 2013, Yale filed an Omnibus Pre-trial Motion. As part of the Motion,[2] Yale included a Motion *In Limine* seeking to prohibit the Commonwealth from introducing statements made by Joan to others about her relationship with Yale and a written statement obtained from Joan's purse that detailed problems in her relationship with Yale. On November 8, 2013, the Commonwealth filed a Motion *In Limine* requesting the introduction of photographs of the crime scene. The trial court held a hearing on the pre-trial Motions. Subsequently, the trial court granted Yale's Motion *In Limine*, preventing the introduction of Joan's letter and various out-of-court statements. However, the trial court also found that where the witnesses were present and heard Joan and Yale's arguments and any other statements made by Yale, such testimony was admissible. The trial court also denied as moot the Commonwealth's Motion, as the parties had reached a stipulation as to the admissibility of the photographs. However, the trial court indicated that it would disallow any inflammatory or cumulative photographs.

The Commonwealth filed a timely Notice of Appeal and a Statement in

---

[1] *See* 18 Pa.C.S.A. §§ 2501(a); 4910(1).

[2] Yale raised various other claims in his Omnibus Pre-trial Motion that are not relevant to this appeal. The trial court denied in part and granted in part Yale's remaining claims in his Omnibus Pre-Trial Motion.

compliance with Pennsylvania Rule of Appellate Procedure 311(D).[3]

Thereafter, the Commonwealth filed a court-ordered Pennsylvania Rule of

Appellate Procedure 1925(b) Concise Statement. The trial court issued an

Opinion.

On appeal, the Commonwealth raises the following questions for our

review:

1. Did the lower court abuse its discretion when it precluded
   from evidence [Joan's] expressions of fear of [Yale], her
   intention to end their relationship, [and] expressions
   manifesting the deterioration of the relationship, where that
   evidence shows the presence of ill-will, a possible motive for
   the killing, an escalation of discord, and rebuts the defense of
   accident?

2. Did the lower court commit error in disregarding a stipulation
   of counsel concerning the introduction of photographs of
   [Joan] and [the] crime scene in a homicide trial by deciding
   that it may still *sua sponte* preclude photographs if it
   determines that they are inflammatory or cumulative?

Brief for the Commonwealth at 11.

In its first claim, the Commonwealth contends that the trial court

should have denied Yale's Motion *In Limine* as the statements at issue

demonstrate the course of events leading to Joan's death. *Id*. at 14, 28.

The Commonwealth points out that the statements were relevant to its

theory of the case because Yale denied he killed Joan, claimed that Joan died

---

[3] Rule 311(D) states that "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(D).

by an accident and denied the existence of marital discord between the parties. *Id*. at 14, 25. The Commonwealth argues that while the statements constitute hearsay, they are admissible under the state of mind exception to the hearsay rule at Pennsylvania Rule of Evidence 803(3). *Id*. at 15-23, 25-28.[4] The Commonwealth specifically argues that the statements regarding (1) Joan's refusal of Yale's demands to have his name put on the deed of the home and on certain certificates of deposit ("CD") demonstrated proof of motive; (2) several statements made by Joan evidenced her fear of Yale; and (3) and multiple statements by Joan showing the escalation of marital problems and her desire to live apart from Yale were admissible under Rule 803(3). *Id*. at 15-23, 25-28; *see also id*. at 15

---

[4] The Commonwealth asserts that Joan's refusal to put Yale's name on the deed of the home or other documents could be admitted under the present sense exception to the hearsay rule at Pa.R.E. 803(1). *See* Brief for the Commonwealth at 24 (wherein the Commonwealth cites to specific statements made by Joan to her daughter-in-law, Yvette Mary Litts ("Yvette"), and her son, Ronald Litts ("Ronald")). However, the Commonwealth does not provide any pertinent analysis or cite to any relevant case law to support its assertion. *See* Pa.R.A.P. 2119(a) (stating that argument must be supported by pertinent analysis and citation to relevant law). Thus, we conclude that this assertion is waived on appeal. Furthermore, even if the assertion was not waived, the Commonwealth is not entitled to relief. Indeed, the statements that the Commonwealth seeks to admit under the present sense impression exception were statements about *past* events, without any indication of how much time had elapsed between the statements and the occurrence, and did not exemplify any impressions that Joan may have had at the time of the occurrence in question. *See* Pa.R.E. 803(1) (stating that a present sense impression is a statement describing an event made while the declarant was perceiving the event or immediately thereafter); *see also Commonwealth v. Stephens*, 74 A.3d 1034, 1037 (Pa. Super. 2013) (stating that little time or no time must exist between the occurrence and the statement, which operates to negate the likelihood of a deliberate or conscious misrepresentation).

- 4 -

(arguing that the statements "allow the Commonwealth to point to a possible motive for the killing, thus, ruling out accident and at the same time helping to establish intent."). The Commonwealth claims that the statements at issue are not being offered for the truth of the matter asserted, but rather to demonstrate Yale's motive to do Joan harm and rebut the defense of accident by evidencing Joan's intent to terminate the relationship and her failure to acquiesce to Yale's demands. *Id*. at 28. The Commonwealth cites to numerous cases to support its argument, but specifically argues that the trial court's reliance upon ***Commonwealth v. Thornton***, 431 A.2d 248 (Pa. 1981), was misplaced, and that the trial court should have relied upon ***Commonwealth v. Sneeringer***, 668 A.2d 1167 (Pa. Super. 1995), in admitting the evidence. ***See*** Brief for the Commonwealth at 14, 27-28.

Our standard of review is as follows:

When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Moser***, 999 A.2d 602, 605 (Pa. Super. 2010) (citation omitted).

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

- 5 -

matter asserted." Pa.R.E. 801(c). Hearsay "is not admissible except as provided by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. Relevantly, the Rules of Evidence provide a "state of mind" exception to the hearsay rule, which states the following:

> **(3) Then–Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3).[5]

> Pursuant to the state of mind hearsay exception, where a declarant's out-of-court statements demonstrate her state of mind, are made in a natural manner, and are material and relevant, they are admissible pursuant to the exception. Out-of-court declarations that fall within the state of mind hearsay exception are still subject to general evidentiary rules governing competency and relevancy. Accordingly, whatever purpose the statement is offered for, be it to show the declarant's intention, familiarity, or sanity, that purpose must be a "factor in issue," that is, relevant. Evidence is relevant if it logically tends to establish a material fact in the case, if it tends to make a fact at issue more or less probable, or if it supports a reasonable inference or presumption regarding the existence of a material fact.

*Commonwealth v. Laich*, 777 A.2d 1057, 1060-61 (Pa. 2001) (citations omitted); *see also Commonwealth v. Moore*, 937 A.2d 1062, 1070 (Pa. 2007) (stating that state of mind evidence is relevant where an issue of self-

---

[5] This version of the Rule took effect on March 18, 2013. "The rule changes result in no substantive change and are intended to conform the Pennsylvania rules, which reference the federal rules of evidence, with the stylistic changes made to the federal rules[.]" *Schmalz v. Manufacturers & Traders Trust Co.*, 67 A.3d 800, 804 n.4 (Pa. Super. 2013).

defense, suicide or accidental death is raised by the defendant);

***Commonwealth v. Luster***, 71 A.3d 1029, 1041 (Pa. Super. 2013) (*en banc*) (stating that out-of-court statements by homicide victims are generally admissible under the state of mind exception "when the statements are relevant for some other purpose, such as proof of motive or malice.").

This Court recently recognized and addressed the conflict between the decisions in ***Thornton*** and ***Sneeringer*** as follows:

> In ***Thornton,*** the [appellant], charged with homicide, admitted that he shot and killed the victim but claimed self-defense and asserted that he had been provoked by the victim. ***Thornton,*** 431 A.2d at 249. The night before the killing, the police arrested the victim and found that he was in possession of a gun. When asked why he was carrying a gun, the victim responded that he was carrying it for protection because "the Thornton brothers were after him." ***Id***. at 251. Over the defendant's hearsay objection, the trial court permitted the officer's testimony. Our Supreme Court ultimately held that the trial court erroneously admitted the victim's statement under the "state of mind" exception:

>> The Commonwealth argues that [the victim's] declaration that he wanted protection because "the Thornton brothers were after him" was admissible to establish fear on the part of [the victim] and thus comes within the "state of mind" exception to the rule against hearsay. It is true that the declaration perhaps tends to establish that the victim … was fearful of the Thorntons. However, the victim's state of mind was not a matter in issue in the case. It was appellant's state of mind, not that of the victim, which was material to establish the degree of guilt, if any, on the charge of criminal homicide.

>> Only when the declaration is considered for the truth of the matter asserted, that appellant and his brother "were after" the victim, does the declaration become relevant, that is,

both material to and probative of appellant's intent to kill. However, when considered for its substantive truth, the declaration, although relevant, is incompetent and hence inadmissible because it is hearsay not within any exception. Thus appellant's objection to admission of the declaration should have been sustained and the testimony excluded.

*Id*. (internal citation omitted).

However, in [*Sneeringer*,] this Court held that a lower court did not err when it admitted hearsay testimony concerning a victim's statement that she intended to end her relationship with the defendant accused of killing her. Applying the "state of mind" exception, this Court reasoned as follows:

The fact that the victim intended to end her relationship with appellant made it more probable that she did end the relationship, than if she had no such intention. Moreover, if the victim did end her relationship with appellant, then such a factor is probative of appellant's motive. The mere fact that the victim expressed an intent to end her relationship with appellant does not establish that she did in fact do so. It does, however, allow the jury to infer appellant's motive from such a revelation, and is properly considered in resolving the question of whether appellant killed the victim.

*Sneeringer,* 668 A.2d at 1171–72.

In *Levanduski*, an *en banc* panel of this Court recognized an apparent conflict between our Supreme Court's ruling in *Thornton* and the panel decision of this Court in *Sneeringer* in their application of the "state of mind" exception. The "state of mind" exception at issue in *Levanduski* involved a letter, written by the victim, [Mr.] Sandt, describing several letters he found in which the appellant (the victim's common law wife) had written and received from a man ([Mr.] Fransen) that he suspected of being his wife's lover. [Mr.] Sandt's letter described that in one of the appellant's letters, she discussed getting "rid of [Sandt] so [the appellant and her lover] could be together." *Levanduski*, 907 A.2d at 9. Furthermore,

[i]n his letter, Mr. Sandt wrote about the relationship between [a]ppellant and Mr. Fransen and referred to: [a]ppellant's allegations of spousal abuse; [a]ppellant's

- 8 -

desire to further her relationship with Mr. Fransen; Mr. Sandt's own demand for his share of the marital property; and[] the possible nexus between [a]ppellant and Mr. Fransen, and Mr. Sandt's missing .22 caliber revolver.

*Id*. at 18.

… [T]he *Levanduski* Court did not reject the *Sneeringer* approach outright, but instead distinguished itself on the facts and, consequently, applied the general rule of *Thornton*. In fact, the *Levanduski* Court noted an approach similar to that applied in *Sneeringer* had been applied by our Supreme Court in *Commonwealth v. Stallworth*, 566 Pa. 349, 781 A.2d 110, 118 (2001).[6] However, the *Levanduski* [C]ourt refused to apply the *Sneeringer* standard because:

The letter in the instant case does not generate the same probative value as the victims' statements in the cited cases [(*Sneeringer* and *Stallworth*)]. Here, Mr. Sandt's letter is mostly his commentary on the relationship between the co[-]defendants. In fact, the trial court admitted the letter as evidence of the relationship between [a]ppellant and Mr. Fransen. On the other hand, the letter conveys a very mixed message regarding the state of the relationship between [a]ppellant and Mr. Sandt, vacillating between possible separation and promises of reconciliation. Significantly, the letter does not contain any threats made

---

6 In *Stallworth*, the Pennsylvania Supreme Court addressed the admissibility of out-of-court statements in a situation where the defendant and the decedent were in a domestic relationship, and the deceased victim had, prior to her death, filed a protection from abuse ("PFA") petition against the defendant. *Stallworth*, 781 A.2d at 117. The Court affirmed the decision of the trial court to admit statements contained in the petition on the basis that the challenged statements were not hearsay because they were not being offered to prove the truth of their content. *Id*. at 118. The Supreme Court specifically held that, while the victim's statements contained in the PFA petition could be offered as evidence of the victim's state of mind regarding the relationship and "the malice and/or ill-will she perceived," the statements could not be admitted as substantive evidence that the appellant committed the acts described in the petition. *Id*. In so concluding, the Court noted that "an out-of court statement by a murder victim may be admitted to establish the motive of the defendant when those statements are not offered to prove the truth of the matter asserted." *Id*.

on Mr. Sandt's life, by either [a]ppellant or Mr. Fransen. At most, the letter represents pure conjecture well-seasoned with romantic hyperbole.

*Levanduski*, 907 A.2d at 20.

\*\*\*

To the extent *Sneeringer* is still viable, *Levanduski* suggests a case-by-case approach whereby *Thornton* stands as the general rule under which a limited exception may exist when the inference generated by admission of the hearsay statement is strong and highly probative.

*Commonwealth v. Green*, 76 A.3d 575, 579-81 (Pa. Super. 2013) (footnote added).

In *Green*, the trial court admitted statements by a shooting victim to two witnesses under the state of mind exception to the hearsay rule. *Id*. at 579. According to the testimony of the witnesses, the victim stated that she "needed to get away" from the appellant, that she was afraid of the appellant, and that she did not want to "go with him" anymore. *Id*. This Court ruled as follows:

Considering the statements as evidence of [a]ppellant's motive, it appears impossible to demonstrate such an inference without accepting the statements for the truth of the matter asserted. To be relevant as to [a]ppellant's motive, we would have to accept that the [v]ictim was fearful of [a]ppellant and that she was attempting to end their relationship. To accept those conclusions as the basis for [a]ppellant's motive is to accept the literal "truth" of the hearsay statements. If the [v]ictim was not, in fact, fearful of [a]ppellant and in the process of ending their relationship, then there was nothing about the hearsay statements that provided evidence of motive. Put more succinctly, it is only when the admitted hearsay statements are taken as truthful that they provide competent evidence of motive. *Thornton* rejected the admission of such statements

- 10 -

under the "state of mind" exception to the hearsay rule. Either these statements were relevant but inadmissible as hearsay without an applicable exception, or they were not hearsay, in which case they were irrelevant.

*Id*. at 581. Thus, this Court concluded that the trial court abused its discretion in admitting the hearsay statements under the "state of mind" exception. *Id*. at 582.

However, we note that in reaching its decision, the **Green** Court did not consider the other decisions of this Court and the Supreme Court that address the state of mind exception. In **Commonwealth v. Collins**, 703 A.2d 418 (Pa. 1997), the trial court permitted out-of-court statements made by the homicide victim that she intended to meet with the defendant and that she was concerned that the defendant would harm her if she hindered his illegal activities. **Collins**, 703 A.2d at 425. The Supreme Court held that the statements were properly admitted as they provided circumstantial evidence that the victim did meet with the defendant and permitted the jury to conclude that the defendant had the opportunity to kill the victim. **Id**.

In **Commonwealth v. Chandler**, 721 A.2d 1040 (Pa. 1998), the trial court admitted into evidence "eyewitness observations of [the victim's] family and co-workers, which were not hearsay, and ... statements [the victim] made concerning her negative feelings about [the defendant] and

her relationship with him."[7]  ***Chandler***, 721 A.2d at 1045.  Our Supreme Court concluded that the victim's "statements were admissible under the 'state of mind' exception to the hearsay rule because [the victim's] opinion of [the defendant] and her marriage to him went to the presence of ill[-]will, malice, or motive for the killing."  ***Id***.

Additionally, in ***Commonwealth v. Fletcher***, 750 A.2d 261 (Pa. 2000), *abrogated on other grounds by* ***Commonwealth v. Freeman***, 827 A.2d 385, 400 (Pa. 2003), the Supreme Court addressed, in the context of an ineffectiveness of counsel claim, a homicide victim's out-of-court statement that he had smoked drugs belonging to the defendant.  ***Fletcher***, 750 A.2d at 275-76.  The Supreme Court held that the victim's statement established his state of mind regarding his relationship with defendant and was thus admissible under the state of mind hearsay exception to establish the presence of ill-will, malice, or motive for the killing.  ***Id***. at 276.

In ***Commonwealth v. Puksar***, 740 A.2d 219 (Pa. 1999), the disputed evidence involved two conversations that had taken place between the defendant and his brother, who was one of the deceased victims of the homicides.  ***Puksar***, 740 A.2d at 224.  In each instance, a witness overheard the conversations, one of which was a dispute over model trains[8]

---

[7] The Supreme Court does not set forth the specific statements made by the victim with regard to her negative feelings toward the defendant.

[8] Scattered boxes of model trains were found around the victim.  ***Puksar***, 740 A.2d at 223.

and the other consisted of the parties yelling at each other about an unidentified matter. *Id*. The Supreme Court held that testimony was admissible as non-hearsay testimony because the truth of the content of the conversations was not at issue. *Id*. at 225. The Supreme Court further held that the conversations, which were apparently heated arguments, evinced "ill-will between the brothers" regardless of the truth of what was said by either speaker. *Id*.

In *Luster, supra*, statements by a murder victim to her friends that she was afraid of appellant, that appellant "was going to do something real bad to her," and that appellant was "trying to kill" her were introduced at trial. *Luster*, 71 A.3d at 1041. This Court, sitting *en banc*, recognized that a victim's state of mind is only admissible where the victim's state of mind is a factor at issue in the case. *Id*. This Court concluded that the statements were admissible under the state of mind exception to the hearsay rule because the appellant had denied responsibility of the murder and thus, the statements evidenced appellant's ill-will and malice toward the victim. *Id*. at 1042; *see also Commonwealth v. Kunkle*, 79 A.3d 1173, 1185 (Pa. Super. 2013) (concluding that the admission of hearsay statements by the decedent that he was scared of appellant and that appellant would be to blame if decedent died was proper under Pa.R.E. 803(3) and *Luster*, as the statements reflected appellant's ill-will and malice toward decedent).

However, not all of the recent Pennsylvania Court decisions favor the admissibility of these out-of-court statements. In **Commonwealth v. Laich**, 777 A.2d 1057 (Pa. 2001), the defendant was prosecuted for the homicides of his former girlfriend and her paramour. **Id**. at 1059. The defendant admitted to the killings, but sought to refute the Commonwealth's claim of murder in the first degree and instead sought a verdict of voluntary manslaughter. **Id**. at 1060. The trial court permitted the Commonwealth to introduce testimony from a witness regarding the victim's statement to her that the defendant had threatened that "if he couldn't have her, [and] if he ever caught her with another man, that he would kill them both." **Id**. The **Laich** Court held that the trial court erred in admitting this evidence, as the state of the victim's relationship with the defendant was irrelevant to his degree of guilt. **Id**. at 1062. The Court pointed out that defendant admitted to the murders, but argued that he had only done so with provocation. **Id**. In light of this defense, it was the defendant's state of mind at the time of the killings that was relevant as to whether he committed the crimes with premeditation or whether, as he claims, he was acting with a "sudden and intense passion resulting from serious provocation." **Id**. Accordingly, the trial court erred in allowing the out-of-court statements because such testimony was not relevant to the case. **Id**.

In **Moore**, a capital case, the Commonwealth sought to introduce a homicide victim's statements to his father, sister, and friend regarding the

ongoing bullying by appellant "under the state of mind exception to the hearsay rule in order to establish the presence of ill[-]will, malice, or motive for the murder." *Moore*, 937 A.2d at 1070. The appellant argued that the testimony was inadmissible under the state of mind exception. *Id*. The appellant specifically argued that the statements were irrelevant to any issue in the case as the Commonwealth had to prove that the killing was willful, deliberate, and pre-meditated. *Id*. The appellant claimed that it was his state of mind, rather than the victim's, that was relevant. *Id*. Further, the appellant did not present a defense of self-defense or accident, which would implicate the victim's state of mind, but instead sought to establish reasonable doubt as to the identity of the shooter. *Id*. The Supreme Court reiterated that while the statements could be admissible as circumstantial evidence of the victim's fear of appellant, they could not be offered for the truth of the matters contained therein. *Id*. at 1072. The Supreme Court held that because the Commonwealth utilized the truth of the statements as substantive evidence at trial, the trial court erred in admitting the hearsay

statements. *Id*. at 1072-73.[9]

While we acknowledge apparent conflicting decisions applying the state of mind exception,[10] the case law confirms that an out-of court statement by a homicide victim is admissible under the state of mind exception of the hearsay rule as long as it is relevant and probative of some

---

[9] We note that the *Moore* Court also stated that it did not expressly overrule the *Fletcher* decision, but that "the existing and subsequent *Stallworth* and *Laich* decisions already curtail an expansive reading of *Fletcher's* reasoning." *Moore*, 937 A.2d at 1073 n.7; *see also Commonwealth v. Fletcher*, 986 A.2d 759, 784 (Pa. 2009) (stating that the Supreme Court "has placed limits on the scope of the 'state of mind' exception since *Fletcher* [] was decided, and held that a victim's state of mind cannot be introduced as substantive evidence that a defendant acted in conformity therewith[.]"). The *Moore* Court noted that "*Fletcher's* reasoning is explicitly directed to the use of victim state of mind evidence to establish the victim's state of mind." *Moore*, 937 A.2d at 1073 n.7.

[10] This case may provide the Supreme Court of Pennsylvania, which has not recently addressed the admissibility of out-of-court statements by a homicide victim based upon the state of mind exception, with the opportunity to further clarify this exception, as it is a pre-trial appeal and involves numerous statements.

material issue in the case.[11]  **Laich**, 777 A.2d at 1060-61; **accord Levanduski**, 907 A.2d at 15-16; **see also Moore**, 937 A.2d at 1070.  A declarant's state of mind is relevant if it is an element of a charge, claim or defense such as self-defense, accident or suicide, and the statement is probative on the question of the victim's state of mind.  **Moore**, 937 A.2d at

---

[11] The Commonwealth also cites to **Commonwealth v. Ulatoski**, 371 A.2d 186 (Pa. 1977), for the following:

> [E]vidence concerning the previous relations between a defendant and a homicide victim is relevant and admissible for the purpose of proving ill[-]will, motive or malice.  Evidence of prior occurrences in which the accused threatened, assaulted, or quarrelled with the decedent may be admissible for this purpose.  This principle applies when the decedent was the spouse of the accused.  Thus, evidence concerning the nature of the marital relationship is admissible for the purpose of proving ill[-]will, motive or malice.  This includes, in particular, evidence that the accused physically abused his or her spouse.

**Id**. at 190.  However, the **Ulatoski** Court further stated that "[t]estimony concerning the marital relationship between a defendant and decedent, like any other evidence, is subject to the general evidentiary rules governing competency and relevancy."  **Id**. at 191.  "Hence, **Ulatoski** did not create an exception to the hearsay rule; nor did it contemplate that testimony regarding marital relationships in cases such as this would be subject to a relaxed standard of admissibility."  **Commonwealth v. Myers**, 609 A.2d 162, 165 (Pa. 1992).  Thus, despite the holding in **Ulatoski**, we must determine whether the out-of-court statements in this case are admissible under the state of mind exception to the hearsay rule.

1070.[12] A declarant's out-of-court statement that he intends to perform a particular act in the future may also be relevant and admissible under this exception to establish that the declarant acted in conformity with his/her expressed intention. *Collins*, 703 A.2d at 425; *Sneeringer*, 668 A.2d at 1171-72. Moreover, state of mind evidence is admissible when it explains the victim's state of mind regarding the relationship and the malice and/or ill-will that the victim perceived. *Stallworth*, 781 A.2d at 118; *Kunkle*, 79 A.3d at 1185; *Luster*, 71 A.3d at 1041-42.[13] Furthermore, eyewitness observations of arguments between the victim and defendant are admissible. *See Puksar*, 740 A.2d at 224; *Chandler*, 721 A.2d at 1045. Significantly,

---

[12] We note that the *Moore* decision seems to contradict the *Thornton* decision in that *Moore* allows for the admission of state of mind hearsay testimony where the defendant argues self-defense. *Compare Moore*, 937 A.2d at 1070 (stating that state of mind evidence is relevant when defendant argues self-defense), *with Thornton*, 431 A.2d at 251 (stating that where appellant argued self-defense, it was the appellant's state of mind, not the victim's, which was material to establish the degree of guilt on the charge of criminal homicide). However, *Moore* did not overrule the *Thornton* ruling, and *Green*, while not citing to *Moore*, confirms the continued viability of the *Thornton* decision.

[13] The *Green* decision seems to contradict the *Luster* decision with regard to the victims' statements of being afraid of the respective appellants. However, as *Green* does not cite to *Luster* or overturn that precedent, we conclude that the *Green* decision in this respect is a case-specific holding and not applicable in this case. We further note that in *Luster*, the victim's statements that appellant "was going to do something real bad to her," and that appellant was "trying to kill her" appear to be expressing the victim's belief. *Luster*, 71 A.3d at 1041; *see also Kunkle*, 79 A.3d at 1185 (wherein the decedent's out-of-court statement that appellant would be to blame if he died was deemed admissible). Rule 803(3) plainly states that a declarant's then-existing state of mind does not include a statement of belief to prove a fact believed unless it relates to the validity or terms of a will. Pa.R.E. 803(3).

to be admissible under this exception, the statement must reflect the declarant's state of mind or emotional, sensory, or physical condition **that existed at the time of the statement**. Pa.R.E. 803(3); *see also Schmalz*, 67 A.3d at 804.

Out-of-court statements that look backward, or describe a declarant's past memory or belief about another's conduct, are inadmissible under this exception. **See** Pa.R.E. 803(3); **see also Schmalz**, 67 A.3d at 804 (stating that "a statement relating to past events based on memory or belief is not permissible to establish the truth of those events, absent relation to the execution, revocation, identification, or terms of the declarant's will."). The declarant must not have had an opportunity to reflect on his/her then-existing state of mind as to a past fact. **See Schmalz**, 67 A.3d at 804 (stating that the "statement must be instinctive, rather than deliberate[.]") (citation and quotation marks omitted). Thus, the admission of the out-of-court statement must be limited to a declaration showing the declarant's then-existing state of mind and not the factual occurrence engendering that state of mind. **See** Pa.R.E. 803(3).[14] Furthermore, it is also clear that the out-of-court statements by a victim cannot be used as

---

[14] For example, if a victim stated that she was afraid of the defendant because he had struck her, the entire statement would be inadmissible under Pa.R.E. 803(3) because the statements are perceptions or beliefs a victim has of events. Thus, the statement of a declarant's state of mind would only be admissible as to her statement that she was afraid under Pa.R.E. 803(3). The *reasons* why she was afraid cannot be characterized as declarations of her state of mind.

substantive evidence, as this would contravene the rule against hearsay. *Moore*, 937 A.2d at 1072; *Stallworth*, 781 A.2d at 118. Finally, even if the out-of-court statement is relevant, the courts must still balance the relevance and the prejudicial effect of the admission of the statement. *See Commonwealth v. Barnes*, 871 A.2d 812, 818 (Pa. Super. 2005) (stating that in determining whether evidence should be admitted, the trial court must weigh the relevance against the prejudicial impact of the admission of the evidence, and that the court may conclude that relevant evidence is inadmissible on account of its prejudicial impact).

Here, the Commonwealth asserts that because Yale will utilize a defense of accidental death, and denies the existence of marital discord between the parties, Joan's out-of-court statements are admissible to demonstrate Yale's motive in killing Joan. *See* Brief for the Commonwealth at 14, 15, 25; *see also* Trial Court Opinion, 2/6/14, at 1 (stating that "it is almost certain that an accidental fall will be the crux of the defense[.]"). However, "the general fact that the defense argues 'accident' does not open the gates of hearsay through the state[-]of[-]mind exception. The Commonwealth must still show why the decedent's state of mind is relevant." Trial Court Opinion, 2/6/14, at 3. Indeed, the out-of-court statement must be probative on the question of the victim's "then-existing" state of mind and must not include "a statement of memory or belief to prove the fact remembered or believed." Pa.R.E. 803(3); *Moore*, 937 A.2d

at 1070. Accordingly, because Yale is likely to use a defense of accident, we must review the out-of-court statements at issue, and determine whether they are probative of Joan's state of mind and admissible under Rule 803(3).[15] **See Moore**, 937 A.2d at 1070.

First, the Commonwealth asserts that Yvette, Joan's daughter-in-law, will testify as to Joan's statements that Yale called her names and threw things around the house when he became upset; that she and Yale argued over putting Yale's name on Joan's house; that Yale was mentally abusing Joan by calling her names; that Yale was "acting up again;" that her marriage was one of convenience and not of love; that Yale wanted her to put his name on a CD; that Joan gave Ronald two safety deposit boxes with financial information and told Ronald to go through the boxes "if anything happened to her;" that Joan called to talk to her son and sounded depressed; and that Yale called the day before Joan's death about having Joan's son call him. **See** Interview (Yvette), 3/23/01, at 1-6 (unnumbered); **see also** Brief for the Commonwealth, Exhibit C. Yvette would also testify to her belief that Joan was considering a divorce. **See** Interview (Yvette),

---

[15] We note that the Commonwealth has attached an exhibit to its brief that details the various out-of-court statements it seeks to admit at trial. **See** Brief for the Commonwealth, Exhibit C. We address only these specific statements in this Memorandum. The complete statements in question are found in reports generated by the Pennsylvania State Police of interviews of the relevant witnesses, which the Commonwealth attached to its Brief in Opposition to Yale's Motion *In Limine*.

- 21 -

3/23/01, at 3-4 (unnumbered); *see also* Brief for the Commonwealth, Exhibit C.

These statements are inadmissible under the state of mind exception. Indeed, many of the statements involve past events, and do not include Joan's then-existing state of mind. *See* Pa.R.E. 803(3). Further, Yvette's beliefs about Joan's thoughts and Yale's statements[16] are not admissible under Rule 803(3) to demonstrate Joan's then-existing state of mind. Finally, with regard to the safety deposit boxes full of financial information, it is unclear from Yvette's statements whether she personally observed the delivery of the boxes or heard Joan's statements. Thus, Yvette's statements, as presented, are not admissible.

Yvette would also testify that Joan called her on March 20, 2001, stating that she was upset because Yale would not allow her to use the cars or give her money. *See* Interview (Yvette), 3/23/01, at 2 (unnumbered); *see also* Brief for the Commonwealth, Exhibit C. Yvette's testimony that Joan was upset evidenced Joan's state of mind at that time and is therefore admissible. *See Schmalz*, 67 A.3d at 805 (stating that testimony as to out-of-court statements that declarant was upset was admissible under the state of mind exception to the hearsay rule). However, the statements regarding

---

[16] The trial court ruled that to the extent the witnesses heard Yale's statements, "those may be received as admissions." Trial Court Opinion, 1/8/14, at 20. The trial court must weigh the relevance against the prejudicial impact of the admission of the evidence. *See Barnes*, 871 A.2d at 818.

- 22 -

the reasons why Joan was upset are not admissible, as they relate to Joan's memory of past events. *See id*. (stating that courts cannot utilize the reasons why the declarant was upset as they involved her memory or belief as to past events); *see also* Pa.R.E. 803(3). Thus, with regard to Yvette's testimony concerning Joan's state of mind, Yvette could only testify to Joan's statement that she was upset.

Next, Ronald would testify that Joan told him that Yale was mentally abusive; that Joan went to East Stroudsburg Savings Association to change the name on a CD; that he received calls from Yale and Joan on March 19, 2001; that Joan calculated how much it cost for Yale to live in her house and that Joan stated that Yale became angry when informed of this calculation; that Joan stated that Yale was mean and nasty; that Joan found out that she could have money from her father's social security; that Joan and Yale could not agree on her will that would allow Yale to get 50% of the house; that Joan asked Ronald whether Yale was going to leave after Yale had called Ronald; that Ronald thought that Yale and Joan fought over every little thing and the fighting was escalating; and in response to Ronald's statement regarding her safety, Joan stated that it was "in the back of her mind, but she thought that she could get to the phone and call 911 if he did anything." *See* Interview (Ronald), 3/22/01, at 1-5 (unnumbered); *see also* Brief for the Commonwealth, Exhibit C.

The statements regarding Joan's recitation of past events are inadmissible under the state of mind exception, as they do not evidence Joan's then-existing state of mind. Further, Ronald's opinion as to Joan and Yale's arguments are not admissible under Rule 803(3) to evidence Joan's then-existing state of mind.[17] With regard to Joan's response to Ronald's statement about her safety, the response does not demonstrate any plan, motive, design, mental feeling, pain, or bodily health being experienced by Joan. Moreover, Joan's general statement relates to some unknown future conduct by Yale and we cannot infer Joan's then-existing state of mind, such as fear. Thus, the trial court properly found that the above statements were inadmissible under Rule 803(3).

Ronald would also testify about a message left by Joan on March 22, 2001, the day of her death. According to the Commonwealth, Ronald would state that Joan declared her intent to stay at Ronald's home. *See* Brief for the Commonwealth at 20; *accord* Trial Court Opinion, 2/6/14, at 5 (wherein the trial court states that based upon the Commonwealth's description of the statement, it would be admissible). However, our review of Ronald's

---

[17] We note that the Commonwealth also seeks to introduce statements made by Yale to Ronald, including that that Yale called him to go to Joan's house because Yale and Joan were arguing, and that Yale stated that something had to be done. Interview (Ronald), 3/22/01, at 2 (unnumbered); *see also* Brief for the Commonwealth, Exhibit C. As noted above, the trial court ruled that Yale's statements, that were heard by the witnesses, are admissible. Trial Court Opinion, 1/8/14, at 20; *see also Barnes*, 871 A.2d at 818. Furthermore, any arguments observed by the witnesses were also admissible. *See* Trial Court Opinion, 1/8/14, at 20; *see also Puksar*, 740 A.2d at 224; *Chandler*, 721 A.2d at 1045.

interview with the police, detailing this particular statement, discloses that Ronald stated that "his mother said in the message that she wanted to stop by at some point in the day." Interview (Ronald), 3/22/01, at 1 (unnumbered); *see also* Brief for the Commonwealth, Exhibit C. The statement, as constructed by the Commonwealth, would be relevant and admissible to demonstrate that Joan intended to leave her home and live with Ronald. *See Sneeringer*, 668 A.2d at 1171–72. However, the statement, as recited by Ronald in the police interview, would be inadmissible as Joan's decision to stop by Ronald's house was not relevant or probative of Joan's state of mind or of Yale's motive. Because the Commonwealth fails to cite to the record to support its interpretation of Joan's message to Ronald, and in light of the plain language of Ronald's statements in the police interview, we conclude that the statement is inadmissible. Additionally, the other messages left by Joan on March 22, 2001, are not relevant and do not state Joan's then-existing state of mind under Rule 803(3).

Finally, Ronald would testify that on March 21, 2001, Joan gave him nine envelopes of financial information "in case something happened to her;" that on March 20, 2001, Joan gave him two lockboxes containing paper and money; and that Joan wanted to get the boxes out of the house "in case something happened to her." Interview (Ronald), 3/22/01, at 1 (unnumbered); *see also* Brief for the Commonwealth, Exhibit C. Ronald

would also testify that on March 19, 2001, Joan called him and was crying and upset because Yale cut her monthly allowance and could not get things for her grandchildren. *See* Interview (Ronald), 3/22/01, at 2 (unnumbered); *see also* Brief for the Commonwealth, Exhibit C.

Ronald's statements that Joan gave him the envelopes and lockboxes of financial information are admissible, as he observed this interaction. Further, Joan's statement that she provided this information "in case something happened to her" is also admissible, as it demonstrates her then-existing intent as to the reason for providing the financial information to Ronald. Moreover, Joan's statement that she was upset is admissible; however, the statements as to her reasons for being upset are inadmissible. *See Schmalz*, 67 A.3d at 805. Thus, Ronald could testify regarding these statements, and the trial court improperly found this testimony to be inadmissible at trial.

Next, the Commonwealth sought to introduce testimony of Joan's other son, Randall Litts ("Randall"), who would testify that Joan and Yale argued over ownership of the house for four years; that Yale called Randall a Nazi and a vulture and that Joan told Randall not to get upset; that Joan's main concern was that Randall not be upset over the phone call; and that Yale sounded calm when he called to inform Randall about Joan's fall. *See* Interview (Randall), 3/22/01, at 1-4 (unnumbered); *see also* Brief for the Commonwealth, Exhibit C.

These statements are inadmissible under the state of mind exception. Indeed, these statements involve Randall's observations about the length of the fight over the home, Yale's statements, and Joan's statements regarding Randall's feelings. Thus, to the extent the Commonwealth seeks to admit these statements as evidencing Joan's state of mind, we agree with the trial court's ruling that the statements are inadmissible.[18]

The Commonwealth also sought to introduce the testimony of Lorraine Litts ("Lorraine"), Randall's wife and Joan's daughter-in-law. Lorraine would testify that Joan brought envelopes of financial information to her home in case something happened; that Joan was nervous when bringing the financial information to her home; that Joan told Lorraine that she assured Yale that she was not filing for divorce yet; and that Lorraine told Joan not to be afraid of calling 911, and Joan replied she would call 911 if needed. *See* Interview (Lorraine), 3/22/01, at 1-4 (unnumbered); *see also* Brief for the Commonwealth, Exhibit C.

As noted above, Joan's action of bringing financial information and her statement is admissible. However, Lorraine's belief that Joan was nervous does not implicate Joan's state of mind. Moreover, Joan's statements to Lorraine regarding past events, *i.e.*, whether she would file a divorce complaint, are inadmissible under the state of mind exception. Further,

---

[18] Again, as noted above, the trial court allowed the admission of Yale's statements to the witnesses and any arguments that the witnesses had observed. Trial Court Opinion, 1/8/14, at 20; *see also Barnes*, 871 A.2d at 818.

Joan's statements in reply to calling 911 does not evidence any plan, motive, design, mental feeling, pain, or bodily health being experienced by Joan. Thus, Lorraine could only testify to Joan's action of bringing financial information to her home and Joan's statement in connection with the action.

The Commonwealth also sought to introduce the testimony of Harold Myers ("Myers"), Joan's brother. Myers would testify that Joan was scared to death of Yale; that Joan was scared of Yale doing physical harm to her; and that Joan was concerned about keeping her home for her children. **See** Interview (Myers), 6/6/12, at 1 (unnumbered); **see also** Brief for the Commonwealth, Exhibit C.

While Myers's statements indicated Joan was scared, there is no indication in the record to show that she actually made such statements. Thus, we conclude that these statements are inadmissible. Further, Joan's statement as to the ownership of the home relates to past events and does not signal her state of mind. Thus, these statements were properly found to be inadmissible.

The Commonwealth also seeks to introduce notes, written by Joan, that were found in her purse. The notes set forth various statements, purportedly made by Yale, including telling Joan to "move it now elephant, fat pig;" telling Joan that he was going to commit her to the "crazy house;" calling Joan's grandchildren names; telling Joan that she would not be allowed to give anything to her grandchildren; and screaming at Joan.

None of these statements are admissible under the state of mind exception, as they do not demonstrate Joan's then-existing state of mind. Indeed, the statements are merely recollections of past events and a commentary of Joan and Yale's marital strife. ***See Levanduski***, 907 A.2d at 20. Thus, the trial court properly ruled the letter to be inadmissible.

Next, the Commonwealth seeks to admit the testimony of Joan's neighbor, Agnes Diehl ("Diehl"). Diehl would testify Joan would come to her house and declare that Yale treated her poorly; that Yale called her names; and that Yale wanted his name on the deed of the house. ***See*** Interview (Diehl), 7/3/13, at 1-2 (unnumbered); ***see also*** Brief for the Commonwealth, Exhibit C. Diehl stated that Joan appeared to be suffering from significant mental stress. ***See*** Interview (Diehl), 7/3/13, at 1 (unnumbered); ***see also*** Brief for the Commonwealth, Exhibit C. Diehl would also testify that she would hear Yale screaming at Joan and that Ronald would subsequently come to Joan's house. ***See*** Interview (Diehl), 7/3/13, at 1 (unnumbered); ***see also*** Brief for the Commonwealth, Exhibit C.

With regard to Joan's statements to Diehl detailing Yale's prior behavior, these statements are inadmissible under the state of mind exception. Further, Diehl's observations about Joan's mental health are not admissible to demonstrate Joan was actually feeling mental stress under the exception. Indeed, there is no indication that Joan made any statement with

regard to her mental stress. However, as noted above, the trial court already found any arguments between Joan and Yale, which were heard by the witnesses, to be admissible. *See* Trial Court Opinion, 1/8/14, at 20; *see also Barnes*, 871 A.2d at 818. Thus, Diehl's statements that she heard screaming is admissible. *See id*.; *see also Puksar*, 740 A.2d at 224; *Chandler*, 721 A.2d at 1045.

Finally, the Commonwealth seeks to admit the testimony of Robert Vandercar ("Vandercar"), a former neighbor of Joan. According to the Commonwealth, Vandercar would testify regarding Joan's statements that she was afraid that Yale would kill her "within a year of the murder." Commonwealth Brief in Opposition of Yale's Motion *In Limine*, 2/26/14, at 15 n.7. However, aside from this mention in the Commonwealth's Brief in Opposition to Yale's Motion *In Limine*, there is no indication that Vandercar would testify to these facts or that Joan made these statements to Vandercar. Thus, this statement is inadmissible.

Based upon the foregoing, we conclude that Joan's act of bringing financial documents and her statements in connection with this act, are admissible at trial. Statements evidencing Joan's then-existing state of mind, *i.e.*, she was upset, are admissible at trial under the state of mind exception of the hearsay rule. Further, any arguments between Yale and Joan, actually heard by the witnesses, are also admissible. *See* Trial Court

Opinion, 1/8/14, at 20; **see also Barnes**, 871 A.2d at 818.  The remaining statements proposed by the Commonwealth are inadmissible.

In its second claim, the Commonwealth contends that the trial court improperly reserved the right to disallow cumulative or inflammatory photographs of victim and the crime scene, where the parties had stipulated as to the admissibility of the photographs.  Brief for the Commonwealth at 29-31.  The Commonwealth argues that since neither party was challenging the admissibility of the photographs, the trial court has no discretion in deciding admissibility.  **Id**. at 30-31.[19]

Here, the trial court acknowledges that the parties entered into a stipulation over the admissibility of photographs of Joan's body and the crime scene.  **See** Trial Court Opinion, 2/6/14, at 5; Trial Court Opinion, 1/8/14, at 21.  However, the trial court further stated that despite the stipulation, it could, in its discretion, exclude cumulative or inflammatory photographs.  **See** Trial Court Opinion, 2/6/14, at 5-6; Trial Court Opinion, 1/8/14, at 21.  The trial court relied on our Supreme Court's decision in **Commonwealth v. Murray**, 83 A.3d 137, 156 (Pa. 2013), for the proposition that when the Commonwealth proffers photographs of a homicide victim for admission into evidence, the trial court must determine whether the photographs are inflammatory and if so, whether the prejudicial

---

[19] We note that Yale did not set forth an argument related to this claim in his brief on appeal.

impact outweighs the probative value of the photographs. Trial Court Opinion, 2/6/14, at 6.

In *Murray*, the appellant argued that the trial court utilized an improper standard of review in admitting photographs of the homicide victim. *Murray*, 83 A.3d at 155. The Supreme Court set forth a two-part analysis to be applied by a trial court where the Commonwealth proffers photographs of a homicide victim for admission into evidence:

> First a [trial] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Id*. at 156 (citation omitted). The Supreme Court concluded that the trial court did not err in its process of admitting the photographs. *Id*.

Unlike *Murray*, in this case, Yale *stipulated* to the admissibility of the photographs. It is well-settled that "[a] valid stipulation must be enforced according to its terms." *Commonwealth v. Rizzuto*, 777 A.2d 1069, 1088 (Pa. 2001), *abrogated on other grounds by Freeman*, 827 A.2d at 400. "Parties may by stipulation resolve questions of fact or limit the issues, and, if the stipulations do not affect the jurisdiction of the court or the due order of the business and convenience of the court they become the law of the case." *Rizzuto*, 777 A.2d at 1088; *see also Commonwealth v. Mathis*, 463 A.2d 1167, 1171 (Pa. Super. 1983).

Thus, because Yale and the Commonwealth stipulated to the admission of the photographs of the victim and the scene of the death, and the stipulation is not being challenged, the trial court must enforce the stipulation as the law of the case. Accordingly, the trial court does not have any discretion in omitting cumulative or inflammatory photographs.

Order affirmed in part and reversed in part. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2014