431 A.2d 248

COMMONWEALTH of Pennsylvania

v.

Elgin L. THORNTON, Appellant.

Supreme Court of Pennsylvania.

Submitted March 3, 1981.

Decided July 2, 1981.

Bruce E. Dice, Zimmer & Dice, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Kathryn L. Simpson, Asst. Dist. Atty., Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is a direct appeal from judgment of sentence of life imprisonment imposed by the Court of Common Pleas of Allegheny County upon conviction of murder of the first degree. Appellant, Elgin L. Thornton, raises one claim of error: that the trial court, over defense objection, improperly admitted an oral statement made by the victim on the evening before the killing. The trial court ruled the statement admissible on the ground that it was within the "state of mind" exception to the rule against hearsay. We conclude that, because the victim's state of mind was not a factor in issue, the statement was immaterial and irrelevant to the prosecution's case and thus appellant's objection should have been sustained. We also conclude that, when the statement is considered for its substantive truth, although material and relevant to the issue of appellant's intent to kill, the statement could not have reasonably contributed to the jury's verdict. Since we find the erroneous admission of the statement to be harmless error we affirm. See *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

Appellant Thornton was tried before a jury on charges of criminal homicide and criminal conspiracy.[1] He admitted having shot and killed the victim, Larry Moore, but defended on theories of self-defense and provocation. In his brief, appellant acknowledges that "[n]one of the critical facts as posited by the prosecution was denied by the defense."[2]

The evening before the killing, a police patrol car responded to a radio report of a domestic disturbance at the home of appellant's sister. Upon entering the home, police saw

1. Appellant's demurrer to the charge of criminal conspiracy was sustained by the trial court.

2. Appellant's brief at 5.

Larry Moore, estranged common law husband of appellant's sister, standing with a baseball bat in his hand. Appellant's sister and mother were also present. After discovering that Moore was carrying a gun, the police arrested him and then took him to the police station for booking. Although a police officer testified that there was no evidence of physical injury, appellant's sister and mother both testified that they had been hit by Moore. They further testified that after Moore and the police had left, appellant's brother Benny Thornton drove them to a hospital for emergency room treatment.

The following morning, sometime between 10:30 a. m. and 12:00 noon, appellant visited his brother Benny Thornton. Three acquaintances, William Andrews, Robert Childs and Noel Thomas, were also present. Appellant testified that Benny Thornton told him that Moore had beaten their sister and mother with a baseball bat the night before.

Upon learning that Moore and Moore's brother were on a nearby street corner, appellant and his three companions drove to the corner. They arrived at the corner at approximately 2:50 p. m. but did not see Moore. After a brief encounter with Moore's brother, they drove to a neighborhood amusement arcade which appellant managed. Approximately twenty minutes later another acquaintance, Mike Dean, arrived with a message from Benny Thornton that Moore was at a neighborhood school. Appellant testified that he was also told that Moore was attempting to pick up appellant's seven year old nephew (Moore's son) after school.

Immediately appellant and the four men drove to the school. As they reached the side of the school, the driver stopped the car and Noel Thomas got out. The car was then driven to the front gate of the school.

Moore was seated on the school steps directly in front of the school door. Appellant got out of the car and, armed with a shotgun, approached Moore. At a distance of five to ten feet appellant shot Moore in the back. Before appellant shot, Moore raised one hand and then turned toward the school door. Appellant testified that Moore "was turning on

me like he was going for a gun, so I just shot." Noel Thomas, who had approached the school on foot, shot Moore in the leg with a pistol. Shotgun wounds in the back, however, were established to be the direct cause of death. No weapon was found on or near Moore.

Testimony concerning the above sequence of events on the day of the killing was uncontradicted. In addition to appellant's own testimony, eyewitness testimony was given by the three men who remained in the car during the shooting and by a disinterested bystander who was in a car parked directly behind the Thornton car. Corroborating testimony was also given by two witnesses who were driving by the school at the time.

## I. Admissibility of Hearsay Testimony.

The challenged testimony was given by the police officer who responded to the domestic altercation the night before the killing. On direct examination the police officer related his observations upon arriving at the scene. Without objection, the officer testified that he had observed a shoulder holster on Moore and that upon feeling it, he found that it contained a gun. The officer further testified that he removed the gun and arrested Moore. At trial, this colloquy ensued:

"Q. And at anytime did you have a discussion of this gun with Larry Moore?

A. Yes, I did. On the way downtown we asked Larry Moore what in fact was he doing with the gun."

At this point defense counsel objected to the line of questioning on the ground that it was hearsay. The trial court initially sustained the objection but, after an offer of proof, the court reversed its ruling and stated that it would "allow [the testimony] under the state of mind exception to the hearsay rule." The testimony at issue followed:

"Q. What was said by Larry Moore in the car going downtown in reference to this gun that he had in his possession?

A. Well, we asked him why he was carrying a gun, and he says he was carrying it for protection. We asked him why, protection against whom, and he says the Thornton brothers were after him. He didn't state why or how come."

As this Court has stated,

"[d]etermination of the relevancy of evidence offered at trial requires a two-step analysis. It must be determined first if the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence 'renders the desired inference more probable than it would be without the evidence[.]' McCormick's Handbook of the Law of Evidence § 185 (2d ed. E. Cleary 1972) (emphasis omitted)."

*Commonwealth v. Stewart*, 461 Pa. 274, 278, 336 A.2d 282, 284 (1975).

■ The Commonwealth argues that Moore's declaration that he wanted protection because "the Thornton brothers were after him" was admissible to establish fear on the part of Moore and thus comes within the "state of mind" exception to the rule against hearsay. It is true that the declaration perhaps tends to establish that the victim, Moore, was fearful of the Thorntons. However, the victim's state of mind was not a matter in issue in the case. It was appellant's state of mind, not that of the victim, which was material to establish the degree of guilt, if any, on the charge of criminal homicide. Cf. *Commonwealth v. Stewart*, supra (evidence of gang activity relevant to defendant's state of mind).

■ Only when the declaration is considered for the truth of the matter asserted, that appellant and his brother "were after" the victim, does the declaration become relevant, that is, both material to and probative of appellant's intent to kill. However, when considered for its substantive truth, the declaration, although relevant, is incompetent and hence inadmissible because it is hearsay not within any exception. Thus appellant's objection to admission of the declaration should have been sustained and the testimony excluded.

## II. Harmless Error.

Although the hearsay testimony relating the victim's statement was erroneously admitted, the record establishes beyond a reasonable doubt that the error did not contribute to the verdict and hence was harmless. *Commonwealth v. Story*, supra.

■ The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that "[a] defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). Accord, *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968); *Commonwealth v. Davis*, 466 Pa. 102, 117, 351 A.2d 642, 649 (1976).

In *Commonwealth v. Story*, supra, this Court held that an error may be considered harmless only when the Commonwealth proves beyond a reasonable doubt that the error did not contribute to the verdict. Id., 476 Pa. at 406 n.11, 383 A.2d at 162 n.11. Only then has a fair trial been assured and may a retrial therefore be avoided.

"[A]n error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless. *Commonwealth v. Davis*, 452 Pa. [171, 178], 305 A.2d [715, 719 (1973)], quoting *Chapman v. California*, 386 U.S. [18, 24], 87 S.Ct. [824, 828, 17 L.Ed.2d 705 (1967)]."

Id., 476 Pa. at 409, 383 A.2d at 164. *Story* establishes that the *Chapman* standard of harmless error is a requirement of state law. Id., 476 Pa. at 405, 383 A.2d at 162.

A review of the whole record convinces us that the erroneous admission of the challenged hearsay declaration could not reasonably have contributed to the jury's verdict of

murder of the first degree. As stated earlier, when the declaration is considered only as evidence of the victim's state of mind, the declaration is irrelevant because the victim's mental state is not at issue in the case. Moreover, when considered as evidence of the victim's state of mind, the evidence in no respect prejudices appellant. Indeed, fear on the part of the victim would support appellant's claim at trial that appellant believed the victim carried a gun and turned to reach for it, allegedly causing appellant to shoot in self-defense.

When the declaration is considered as evidence of its substantive truth, the declaration becomes relevant to the issue of appellant's intent to kill. If believed, the victim's statement that the Thorntons "were after him" supports the Commonwealth's theory that the killing was willful, deliberate and premeditated. However, the statement could not reasonably have contributed to the jury's verdict because, even without the statement, evidence of an intentional killing was overwhelming. Further, appellant in no respect established the asserted defenses of self-defense or provocation.

■ Murder of the first degree is "an intentional killing," 18 Pa.C.S. § 2502(a), one that is "willful, deliberate and premeditated." 18 Pa.C.S. § 2502(d). It is well settled that "the use of a *gun* on a vital part of the deceased's body *raises the presumption* that the defendant shot with the intent to kill the deceased." *Commonwealth v. Ewing*, 439 Pa. 88, 92, 264 A.2d 661, 663 (1970) (emphasis in original). Accord, *Commonwealth v. Robinson*, 468 Pa. 575, 582–83, 364 A.2d 665, 669 (1976). It is equally well-settled that the period of premeditation necessary to form the specific intent to kill may be very brief. *Commonwealth v. Robinson*, supra.

■ It is undisputed that three to four hours elapsed between the time that appellant learned of the alleged beating of his sister and mother and the time that he committed the killing. During this time appellant sought

out the victim, first by going to a street corner where he believed Moore to be, and then by going to the school where Moore was found and killed. In addition to this evidence of premeditation, there was also undisputed evidence that a companion of appellant who had been riding in the same car approached the school from the side and shot Moore in the leg.

■ The only evidence to support appellant's theories of self-defense and provocation was his own self-serving testimony that he was "upset" at the beating of his sister and mother by Larry Moore, and that when he shot Moore he thought Moore "was going for a gun." This testimony in no respect establishes the requisite elements of self-defense. See 18 Pa.C.S. § 505. Nor on this record does this testimony, even if believed, establish sufficient provocation to reduce the killing to voluntary manslaughter.

> "Our law is quite explicit that the determination of whether a certain quantum of provocation is sufficient to support the defense of voluntary manslaughter is purely an objective standard.
>
> .      .      .      .      .
>
> The ultimate test for adequate provocation [is] whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was 'incapable of cool reflection.' "

*Commonwealth v. McCusker*, 448 Pa. 382, 390, 292 A.2d 286, 289–90 (1972) (footnotes omitted). Accord, *Commonwealth v. Barnosky*, 436 Pa. 59, 64, 258 A.2d 512, 515 (1968).

Given the overwhelming evidence of an intentional killing and the lack of support on this record for appellant's theories of self-defense and provocation, there is no reasonable possibility that the trial court's erroneous evidentiary ruling could have contributed to the jury's verdict. Thus, the error is harmless and the jury's verdict may not be disturbed.

Judgment of sentence affirmed.