J-S18039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JONATHAN BEDOYA | |
| Appellant | No. 2328 EDA 2016 |

Appeal from the Judgment of Sentence March 18, 2016
in the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0003025-2013

BEFORE: PANELLA, SOLANO, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED APRIL 24, 2017**

Appellant, Jonathan Bedoya, appeals from his judgment of sentence for driving under the influence of a controlled substance ("DUI")[1] and careless driving[2] entered in the Northampton County Court of Common Pleas. Appellant argues that the trial court violated his Confrontation Clause rights by admitting expert testimony relating to the results of Appellant's blood tests and an unsigned toxicology report listing the results of Appellant's tests. Appellant also challenges the weight of the evidence. The Commonwealth concedes that the admission of the unsigned report violated

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(d)(2).

[2] 75 Pa.C.S. § 3714. Appellant does not challenge this conviction in the present appeal.

Appellant's Confrontation Clause rights but asserts that this error was harmless due to the overwhelming evidence of Appellant's guilt. We affirm.

The following evidence was adduced during trial. At 8:50 p.m. on June 23, 2013, Appellant was involved in a single-vehicle accident on Route 191 in Northampton County. N.T., 12/1/15, at 25-26. Appellant's brother, Anthony Bedoya, was a passenger in the vehicle at the time of the accident. *Id.* at 73.

Shortly before the accident, David Whitehouse, who was driving two cars behind Appellant, observed Appellant veer over the double yellow line. *Id.* at 26-27. The car between Appellant and Whitehouse passed around Appellant's car on the right shoulder, leaving Whitehouse directly behind Appellant. *Id.* Whitehouse saw Appellant veer again across the yellow line and honked his horn to try to get Appellant's attention. *Id.* at 27. Instead of correcting his path, Appellant drove off the opposite side of the road, slid down a seven-foot embankment, and struck a tree and a pole, smashing in the rear driver side door and cracking several windows. *Id.* at 27, 28, 30, 33, 82, 103-04. Whitehouse exited his vehicle and approached Appellant's vehicle to see whether anyone was hurt. *Id.* at 28. Appellant did not respond appropriately and was incoherent. *Id.* at 34.

Bethlehem Township Officer William Stanton, the first police officer to arrive at the accident scene, observed Appellant sitting in the driver's seat next to several empty packets of synthetic marijuana and hollowed out

cigars. *Id.* at 83, 85-86. Appellant told the officer that he was not injured, but he "appeared . . . to be intoxicated" and "his eyes were rolling around." *Id.* at 87. After exiting the vehicle, Appellant had trouble maintaining his balance, slurred his speech and needed assistance walking up the embankment. *Id.* at 84, 87. Appellant admitted to the officer that he had a problem smoking synthetic marijuana. *Id.* at 100. Appellant's brother told the officer that he and Appellant had been smoking synthetic marijuana that day and "routinely smoke that stuff." *Id.* at 86.

At 11:35 p.m., Trooper Steven Moyer, a drug recognition expert employed by the Pennsylvania State Police, met with Appellant. N.T., 12/2/15, at 18. Trooper Moyer testified that "[s]ynthetic marijuana essentially has similar effects to regular marijuana." *Id.* at 19; *see also id.* at 48 ("very similar" effects).

Trooper Moyer performed a twelve step test to determine whether Appellant was impaired. *Id.* at 6-9. Appellant's errors during the heel-to-toe test, one-leg stand test, and finger-to-nose test indicated that he was impaired, as did the manner in which Appellant's eyes reacted to light stimuli. *Id.* at 29-30, 36, 38, 40, 74-75. He exhibited numerous other signs of impairment, such as poor coordination, bloodshot eyes, eyelid, body, and leg tremors, slowed speech, and elevated blood pressure. *Id.* at 2, 24, 29, 34, 36-37, 38, 40, 41, 64, 79. His tongue was dark green, a sign of recent marijuana usage. *Id.* at 43. In Trooper Moyer's opinion, Appellant

was under the influence of cannabinoids to such a degree that he was unable to safely operate a motor vehicle.[3] *Id.* at 42.

Appellant's blood sample was sent to NMS Laboratory for testing. N.T., 12/1/15, at 41. Dr. Wendy Adams, assistant laboratory director at NMS and an expert in forensic toxicology, testified about the test results. *Id.* at 41-72. She first described the chain of custody of blood samples and NMS' testing procedures and quality controls. *Id.* at 42-49. Several employees work on each sample, including a prep analyst, a calculator, and a second reviewer. *Id.* at 49. If the first test indicates the presence of a controlled substance, there is a second confirmatory test. *Id.* at 51. When testing is complete, a toxicology report is automatically generated listing the test results. *Id.* at 52. There is no author or signature on the report. *Id.* at 70.

Dr. Adams described the result of the toxicology report but admitted that she did not personally test Appellant's blood, handle his sample or prepare the toxicology report. *Id.* at 51-54. Prior to trial, she reviewed all quality control checks and the raw data compiled from tests on Appellant's blood. *Id.* at 47, 54, 69. Based on this review, she reached the

---

[3] Although defense counsel suggested during Trooper Moyer's cross-examination that Appellant's behavior was the result of a concussion, there is no medical evidence in the record that supports this suggestion. As discussed above, Appellant did not appear to be injured at the accident scene.

independent conclusion that Appellant's blood contained XLR-11, a chemical indicator of synthetic marijuana. *Id.* at 52, 54, 56, 69.

Appellant moved to strike Dr. Adams' testimony and the toxicology report on the ground that the Confrontation Clause required the author of the toxicology report to testify instead of Dr. Adams. *Id.* at 60-64; N.T., 12/2/15, at 100-01. The trial court overruled the objection and admitted the report "for the limited purpose of it being a factual basis for [Dr. Adams) rendering her own independent opinion." N.T., 12/2/15, at 101-02. The purpose of this ruling was to exclude the toxicology report as substantive evidence of Appellant's guilt. *Id.* at 102, 108-10. In accordance with this ruling, the trial court gave the following instruction to the jury:

> In giving you her opinion, Dr. Adams referred to certain facts such as [the] NMS report identified as Commonwealth Exhibit 1 that have not — that has not been presented from the witness stand except as Dr. Adams described it as part of the basis of her opinion.
>
> Because that fact has not been presented in evidence except through Dr. Adams' testimony, you should consider the report only for the limited purpose of deciding whether or not to accept Dr. Adams' opinion.
>
> You should not consider the report in any other way in your deliberations in this case because it has no bearing on the question of whether [Appellant] is guilty or not guilty except for the purpose I just described . . . to you. In other words, you're looking at Dr. Adams' opinion and not solely . . . the report. That's just one of the bas[e]s of her opinion[. T]hat's why I allowed the report into evidence.

*Id.* at 165-66.

The jury found Appellant guilty of DUI. On March 18, 2016, the court sentenced Appellant to three to six months' imprisonment followed by fifty-four months' probation. Appellant filed timely post-sentence motions challenging the weight of the evidence, which the court denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

> 1. **Confrontation Clause.** The Sixth Amendment guarantees criminal defendants the right to a fair trial—including the right to confront "witnesses" against them. Here, the government introduced a forensic toxicology report via a "witness" who neither performed, reviewed, authored the report, nor certified the results. Does a "witness" who neither performed, reviewed, authored the report, nor certified the results introduced at trial, violate the Confrontation Clause? In other words, is this the proper "witness" against [Appellant]?
>
> 2. **Weight of the Evidence.** Whether the verdict was against the weight of the evidence when the Commonwealth presented evidence that could equate either with impairment or head trauma and the [drug recognition expert] who opined that the evidence equates to impairment could not provide any reference to the studies he relied upon?

Appellant's Brief at 4.

Appellant first argues that the admission of an unsigned laboratory report listing his blood test results and Dr. Adams' expert testimony relating to these results violated Appellant's rights under the Confrontation Clause of the Sixth Amendment. Our standard of review of this question of law is *de novo*, and our scope of review is plenary. **Commonwealth v. Brown**, 139

A.3d 208, 211 (Pa. Super. 2016), *appeal granted*, ___ A.3d ___, 2016 WL 7235589 (Pa. Dec. 14, 2016) (citation omitted).

The trial court reasoned that Dr. Adams' testimony and the toxicology report violated Appellant's Confrontation Clause rights, but that this error was harmless in light of the court's limiting instruction to the jury and the other evidence of Appellant's guilt. Trial Ct. Op., 9/13/16, at 14-15, 17. Assuming without deciding that there was a Confrontation Clause violation, we agree with the trial court that the error was harmless.

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" This protection applies to state court prosecutions by virtue of the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 406 (1965). The Confrontation Clause "applies to witnesses against the accused—in other words, those who bear testimony. Testimony, in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington*, 541 U.S. 36, 51 (2004).

> In order to determine if a document or statement created out-of-court is testimonial in nature, our Supreme Court looks at the primary purpose of the document or statement. [*Commonwealth v. Yohe*, 79 A.3d 520, 531–32 (Pa. 2013)] (citations omitted). A document or statement is testimonial if its primary purpose is "to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 531 (citation omitted). A document or statement has such a primary purpose if it is created or given "under circumstances which would lead an

>objective witness reasonably to believe that the [document or] statement would be available for use at a later trial[.]" **Id.** (citation omitted). If a document or statement is testimonial, then the witness who prepared it must testify at trial, unless he or she is unavailable and the defendant had a prior opportunity for cross-examination. **Michigan v. Bryant**, 562 U.S. 344, 354 [] (2011) ("[F]or testimonial evidence to be admissible, the Sixth Amendment demands what the common law required: unavailability [of a witness] and a prior opportunity for cross-examination." (internal quotation marks and citation omitted)).

**Brown**, 139 A.3d at 212.

In a series of recent decisions, the United States Supreme Court has addressed difficult questions concerning the legality of forensic tests or expert testimony pertaining to forensic tests under the Confrontation Clause. **See**, **e.g.**, **Melendez-Diaz v. Massachusetts**, 557 U.S. 305, 311 (2009) (absent showing that forensic analysts who prepared report relating to weight of cocaine seized from defendant were unavailable to testify at trial, **and** that defendant had prior opportunity to cross-examine them, defendant was entitled to be confronted with analysts at trial); **Bullcoming v. New Mexico**, 564 U.S. 647, 664-68 (2011) (introduction of blood-alcohol analysis report, wherein forensic analyst certified that defendant's blood-alcohol concentration was well above the threshold for aggravated driving while intoxicated under New Mexico law, through the surrogate testimony of second analyst, who had not certified the report or performed or observed the testing, violated the Confrontation Clause); **Williams v. Illinois**, 567 U.S. 50 (2012) (plurality decision) (Confrontation Clause not violated when

expert expresses independent conclusions based on review of inadmissible evidence, although underlying inadmissible evidence does not become admissible based on expert's independent conclusions). Courts in this Commonwealth have also issued scholarly and exhaustively researched opinions on this subject. *See*, *e.g.*, *Yohe*, 79 A.3d at 530-42; *Brown*, 139 A.3d at 212-20.

Here, Appellant raises another interesting Confrontation Clause question by contrasting this case with *Yohe*. In *Yohe*, a DUI case, our Supreme Court held that the defendant's Confrontation Clause rights were not violated even though the Commonwealth's expert forensic witness did not perform the blood tests himself. *Yohe*, 79 A.3d at 543. The Court held that the expert was a proper "analyst", and therefore a proper witness, for Confrontation Clause purposes, because he supervised the laboratory in which the tests were performed, oversaw technicians who tested the defendant's blood samples, reviewed the test data, evaluated the results, and wrote and signed the report assessing the test results. *Id.* at 540-41. Appellant strenuously argues that crucial distinctions exist between the present case and *Yohe*. Appellant argues that in this case,

> Dr. Adams did not certify the results. She did not perform the underlying analysis. She did not sign or author the report. She was given the report to come to trial and testify to its results. [She] did not do the testing herself. She didn't certify the results. She merely reviewed them when called for trial . . . .

Appellant's Brief at 18.  Further, Appellant argues that while the analyst in

**Yohe** certified that laboratory technicians followed proper procedures,

> Dr. Adams did not witness the opening of the vial of blood, [she] did not check to make sure the sample was intact with no broken seal, she did not have direct access to check that the sample number and report number corresponded with one another, and she did not know that the sample was tested with the utmost care and diligence throughout the entire testing process.  [Appellant] was not given the opportunity to confront the person who performed the test, reviewed it, and the person who certified its validity[;] therefore, he has not confronted the proper witness against him and he was deprived of his Sixth Amendment Confrontation Clause rights.  [Appellant] deserves the opportunity to test the veracity of those who performed the tests and confirmed the results.

**Id.** at 20.

Although this issue is intriguing, we need not examine it in depth. Instead, assuming *arguendo* that Dr. Adams' testimony violated Appellant's Confrontation Clause rights, the error is harmless because the remaining evidence against him is overwhelming.

> The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt.  Its purpose is premised on the well-settled proposition that a defendant is entitled to a fair trial but not a perfect one.

**Commonwealth v. Thornton**, 431 A.2d 248, 251 (Pa. 1981) (quotation and citations omitted).

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely

- 10 -

cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Melvin***, 103 A.3d 1, 20 (Pa. Super. 2014) (citations omitted).

Appellant was convicted of violating 75 Pa.C.S. § 3802(d)(2), which provides:

> **(d) Controlled substances.—** An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
>        \*    \*    \*
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(2). This provision does not require expert testimony.

***See Commonwealth v. Griffith***, 32 A.3d 1231, 1239 (Pa. 2011) (section 3802(d)(2) "does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case"). Thus, under harmless error standards, Appellant's conviction under section 3802(d)(2) remains intact if overwhelming evidence of guilt remains after exclusion of Dr. Adams' expert testimony and the prejudicial impact of her testimony is insignificant by comparison.

The remaining evidence satisfies this test. An eyewitness, Whitehouse, observed Appellant driving his car erratically and then plummeting down an embankment off of the opposite side of the highway, crashing into a tree and a pole. The officer who arrived at the accident scene observed Appellant sitting in the driver's seat next to synthetic marijuana packets and hollowed out cigars. Appellant displayed well-known signs of intoxication: his eyes were rolling around, he slurred his speech, he had trouble maintaining his balance upon exiting the vehicle and needed assistance walking up the embankment. He also admitted to the officer that he had a problem smoking synthetic marijuana. Appellant's brother told the officer that he and Appellant had been smoking synthetic marijuana that day and "routinely smoke that stuff." Later that evening, Appellant exhibited multiple signs of impairment during a meeting with a drug recognition expert. His tongue was dark green, a sign of recent marijuana usage. He failed a heel-to-toe test, one-leg stand test and finger-to-nose test. The manner in which his eyes reacted to light stimuli demonstrated impairment, as did his poor coordination, bloodshot eyes, eyelid, body, and leg tremors, slowed speech and elevated blood pressure. *Cf. Commonwealth v. Mobley*, 14 A.3d 887, 890 (Pa. Super. 2011) (conviction for DUI affirmed even though defendant refused to submit blood sample, where evidence of intoxication included defendant's failure to stop at stop sign despite police officer's cruiser being in full view, strong odor of alcohol emanating from

vehicle, slurred speech, failure to perform four field sobriety tests and inability to recite alphabet). Viewed collectively, these facts overwhelmingly establish that Appellant drove his car while under the influence of a drug that impaired his ability to safely drive the vehicle.

In addition, the trial court minimized any possible Confrontation Clause error by instructing the jury not to consider the toxicology report or Dr. Adams' testimony about the report as evidence of Appellant's guilt. "A jury is presumed to follow a trial court's instructions." *Commonwealth v. Reid*, 99 A.3d 470, 501 (Pa. 2014) (citation omitted). We see nothing in the record that rebuts this presumption. For these reasons, no relief is due on Appellant's first argument.

In his second issue, Appellant challenges the weight of the evidence, claiming that the evidence was equally consistent with head trauma as it was with impairment through use of a controlled substance. We disagree.

Our Supreme Court has held that

> [a] motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and

- 13 -

J-S18039-17

> inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

***Commonwealth v. Ramtahal***, 33 A.3d 602, 609 (Pa. 2011) (citations omitted).

Based on the evidence summarized above, the trial court rejected Appellant's post-sentence motion challenging the weight of the evidence. Even excluding Dr. Adams' report, the court acted within its discretion by concluding that this evidence was "not so contrary to the evidence as to shock one's sense of justice." ***Id.***

In effect, Appellant asks this Court to re-weigh the evidence as indicative of head trauma merely because defense counsel suggested that Appellant might have suffered head trauma while cross-examining the Commonwealth's drug recognition expert. This we cannot do. ***See id.*** ("Appellant's argument is nothing more than a veiled attempt to have this Court re-weigh the evidence and substitute our judgment for that of the jury, which is wholly improper").

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/2017

- 14 -