J-A05023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES KING | : | |
| | : | |
| Appellant | : | No. 533 WDA 2019 |

Appeal from the Judgment of Sentence Entered March 13, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003003-2018

BEFORE:   BENDER, P.J.E.,  BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED MAY 11, 2020**

James King appeals from the March 13, 2019 judgment of sentence imposed after a jury found him guilty of first-degree murder, carrying a firearm without a license, recklessly endangering another person ("REAP"), and tampering with evidence.  We affirm.

This case concerns the shooting death of James Hine (the "victim"), which the trial court summarized as follows:

> On December 17, 2017, Appellant, the victim, and two (2) witnesses, Ashley Gantt and Michael Perret were at a residence located at 936 Angelo Drive in Baldwin[, Pennsylvania].  This is an adult group home for individuals with special needs, of which Mr. Perret was a resident and Appellant, victim, and Ms. Gantt were employees.  A heated argument took place [among the victim, Appellant,] and Ms. Gantt . . . regarding the victim being late for his shift and other personal matters.  The victim and Mr. Perret attempted to calm the situation, but the argument continued to

---

[*] Retired Senior Judge assigned to the Superior Court.

escalate verbally. Ms. Gantt's minor son was present and Mr. Perret brought him to a company vehicle that was parked in the driveway. Shortly thereafter, Ms. Gantt walked out of the house to the car where her son was waiting. Appellant followed her out and stood at the end of the driveway near his vehicle, which was blocking her access to the street. At this point[,] the victim had also exited the home and was standing in the front yard. Ms. Gantt testified that Appellant removed a [.45 caliber] gun from a plastic grocery bag [he was holding at the time] and took aim at the victim. The victim ran away from Appellant and towards two (2) parked vehicles while Appellant fired multiple shots, fatally wounding the victim in the back.

Trial Court Opinion, 6/28/19, at 3-4. Appellant fled the scene, and Officer Milt Mulholland of the Brentwood Police Department responded to the scene shortly thereafter. While awaiting medical attention, the victim named Appellant as the shooter to Officer Mulholland. *See* Affidavit of Probable Cause, 12/17/17, at 2; N.T. Trial, 12/4/18, at 160. Appellant was eventually apprehended and charged with the above-referenced offenses.

As part of the investigation conducted by law enforcement,

[t]hree (3) [spent .45 caliber] cartridge cases were recovered from the scene and were determined to have been discharged from the same firearm.

As part of the investigation, police also searched Appellant's residence [at 1204 Sunday Way, Pittsburgh, Pennsylvania, where he was arrested on January 9, 2018] and recovered .45 and .357 caliber live ammunition from inside the residence, as well as three (3) weathered, spent cartridge casings determined to have been discharged from [.45 and .40 caliber firearms, respectively].

Trial Court Opinion, 6/28/19, at 4.

At trial, the Commonwealth presented, *inter alia*, eyewitness testimony from Ms. Gantt identifying Appellant as the shooter, along with Officer

Mulholland's testimony regarding the victim's statements naming Appellant as his assailant. *See* N.T. Trial, 12/4/18, at 107-10, 160. During the presentation of its case, the Commonwealth introduced photographs of the shell casings and live ammunition seized from 1204 Sunday Way without objection. *See* N.T. Trial, 12/5/18, at 218-20. The Commonwealth also sought to admit the live ammunition and shell casings, themselves, into evidence, along with accompanying expert testimony[1] that they were not fired from or related to the murder weapon. *Id*. at 221-39.

Appellant objected multiple times on the ground of relevance, arguing that the shell casings and ammunition recovered from 1204 Sunday Way were not sufficiently connected to the at-issue crime. *Id*. at 234 ("[T]his is irrelevant because it has nothing to do with the three casings at the scene. . . . Any other ammunition from anywhere else is irrelevant in this particular case."). The Commonwealth countered that this evidence was demonstrative of the completeness of the investigation carried out by law enforcement. *Id*. at 235 ("To be honest, it is for the completion of the search.").

Over Appellant's objections, the trial court permitted the Commonwealth to present both the casings and the accompanying testimony to the jury. At

_____

[1] Specifically, the Commonwealth offered expert testimony from Raymond Everett as an examiner in tool marks and firearms. *See* N.T. Trial, 12/5/18, at 226. In relevant part, he testified that he had examined the shell casings recovered from 1204 Sunday Way. He did not testify regarding a direct connection between the shell casings and the underlying shooting in this case.

- 3 -

the conclusion of that testimony, the trial court issued a cautionary instruction to the jury emphasizing that there was no direct connection between the ammunition and shell casings seized from 1204 Sunday Way and Appellant. *Id*. at 244-46 (instructing that the "only purpose" of this evidence is "to demonstrate the thoroughness of the investigation"). With respect to Appellant's character and guilt, the trial court instructed the jury as follows: "Specifically, you're forbidden from using this evidence as showing that [Appellant] is a person of bad character or criminal tendencies from which you could infer guilt in this case. You simply cannot concern yourselves with that evidence in that context." *Id*. at 245.

Appellant testified on his own behalf, wherein he admitted to shooting the victim, but alleged self-defense by asserting that the victim had threatened to retrieve a gun and shoot Appellant. *Id*. at 300-303. Ultimately, the jury convicted Appellant on the above-referenced charges. After the conclusion of post-verdict motions practice, Appellant filed a timely notice of appeal. Both Appellant and the trial court have timely complied with their obligations pursuant to Pa.R.A.P. 1925.

Appellant raises a single issue for our consideration in his brief:

Did the trial court err in admitting irrelevant and prejudicial evidence at [Appellant's] trial? Specifically, as the bullets and casings found at and around 1204 Sunday Way could not be proven to have been fired by [Appellant], and they were not the same caliber as those used in the shooting and therefore unrelated to the shooting, is not the evidence wholly irrelevant to any issues related to [Appellant's] guilt or innocence? Did this evidence mistakenly give the impression to the jury that [Appellant] was

- 4 -

prone to violence and a person of bad character, suggesting a guilty verdict based upon improper criminal propensity evidence? Finally, was not the limiting instruction given insufficient to cure the prejudice that resulted from testimony surrounding this evidence, and, in fact, constituted a further violation of [Appellant's] due process rights?

Appellant's brief at 6. This issue implicates the admissibility of evidence, which "is a matter solely within the discretion of the trial court." *Commonwealth v. Woeber*, 174 A.3d 1096, 1100 (Pa.Super. 2017). "Generally, an appellate court's standard of review of a trial court's evidentiary rulings is whether the trial court abused its discretion; however, where the evidentiary ruling turns on a question of law our review is plenary." *Id*.

Appellant argues that the evidence of the shell casings and ammunition seized from 1204 Sunday Way have "no rational relationship to the shooting incident," and asserts that the evidence was introduced by the Commonwealth for the inappropriate purpose of demonstrating that Appellant is a "'bad' man with a propensity for violence; and that he must have acted in conformity with that propensity in this case." Appellant's brief at 26. He maintains that he was prejudiced because this allegedly irrelevant evidence strengthened the likelihood that the jury would convict him of first-degree murder. *Id*. at 27. Appellant also alleges that the curative instruction issued by the trial court was insufficient to cure this prejudicial effect. *Id*. at 28-33.

In its Rule 1925(a) opinion, the trial court maintains that the evidence was "relevant to permit the jury the full and complete picture of how the case was investigated." Trial Court Opinion, 6/28/19, at 5. In the alternative, the

trial court argues that any error in admitting this evidence was harmless in light of the additional evidence speaking to Appellant's actions and nature:

> The uncontradicted evidence in this case was that Appellant fired the shot that killed the victim. Appellant admitted to the shooting and it was also witnessed by Ms. Gantt. Viewing this evidence, and comparing it in weight of the impact of any alleged error, it is not reasonable to conclude that the admission of the ballistic evidence recovered from Appellant's residence could have contributed to the verdict. Therefore, any error is harmless.

*Id*. at 6. Upon review of the certified record and governing law, we agree.

Although not explicitly cited as such, we discern that Appellant is characterizing this evidence as inappropriate propensity evidence pursuant to Pa.R.E. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). In general, such evidence is inadmissible. ***Id***.; ***see also Commonwealth v. Grzegorzewski***, 945 A.2d 237, 239 (Pa.Super. 2008) ("It is axiomatic that evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes.").

Assuming, *arguendo*, that Appellant's characterization of the shell casings, ammunition, and accompanying testimony is accurate,[2] an erroneous admission of evidence by the trial court is still subject to harmless error

---

[2] We note that both the trial court's instruction and the Commonwealth's evidence bespoke the lack of a direct connection between this evidence and Appellant. Although our analysis presumes that it is irrelevant, that does not mean that we presume the same evidence is also prejudicial.

- 6 -

analysis. ***See Commonwealth v. Chmiel***, 889 A.2d 501, 521 (Pa. 2005) ("[A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless."). Our Supreme Court has discussed the issue, as follows:

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minmis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilty was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Id***. (quoting ***Commonwealth v. Robinson***, 721 A.2d 344, 350 (Pa. 1998)). We also emphasize that "[n]ot all errors at trial, . . ., entitle an appellant to a new trial and [t]he harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial . . . ." ***Commonwealth v. Fransen***, 42 A.3d 1100, 1113 (Pa.Super. 2012).

Appellant's allegations of prejudice center on his claim of justification and the severity of his conviction. ***See*** Appellant's brief at 27 ("Without the evidence about shooting off other weapons, the jury may have found [Appellant's] justification defense more reasonable and, instead of first-degree murder, convicted [Appellant] of one of the lesser included offenses."). Appellant claims these physical shell casings and live ammunition[3] found at

_____

[3] Prior to the admission of the shell casings and live ammunition, the Commonwealth introduced a series of photographs into evidence that showed

1204 Sunday Way created improper associations between Appellant and firearms in the minds of the jury.

As a general matter, Appellant does not dispute that he shot the victim on the day in question.[4]  Including Appellant's frank admission, the Commonwealth presented eyewitness testimony from Ms. Gantt and the dying declaration of the victim to Officer Mulholland to independently establish that Appellant shot the victim.  **See** N.T. Trial, 12/4/18, at 107-10, 160; N.T. Trial,

_____

the shell casings and live ammunition, *in situ*, at 1204 Sunday Way.  **See** N.T. Trial, 12/5/18, at 218-21.  These photographs were supplemented by testimony from Detective Anthony Perry of the Allegheny County Police Department, who described the items found at 1204 Sunday Way, including the spent shell casings and live ammunition.  **Id**.  Both the photographs and the testimony were adduced without objection from Appellant.  **Id**.  We also note that these photographs and accompanying testimony were presented **before** the physical shell casings and ammunition were offered for admission into evidence.  **Id**. at 218-39.  As such, the physical shell casings and live ammunition were largely duplicative of other evidence successfully adduced by the Commonwealth earlier in the proceedings.

[4] Appellant was convicted of first-degree murder.  **See** 18 Pa.C.S. § 2502(a) (indicating any "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premediated killing.").  "To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill." **Commonwealth v. Williams**, 176 A.3d 298, 306-07 (Pa.Super. 2017).  Instantly, Appellant has conceded that he shot the victim.  Furthermore, Appellant's act of shooting the victim permits an unrebutted inference that he possessed both malice and the specific intent to kill the victim.  **See** **Commonwealth v. Jordan**, 65 A.3d 318, 323 (Pa. 2013).  We also note that premeditation exists "whenever the assailant possesses the conscious purpose to bring about death," and "can be formulated in a fraction of a second." **Id**. (citing **Commonwealth v. Drumheller**, 808 A.2d 893, 910 (Pa. 2002)).

12/5/18, at 300-03. Instead, Appellant focused his efforts on alleging that he had acted in self-defense.[5] At trial, Appellant testified that immediately prior to the shooting, the victim had threatened to shoot Appellant in retaliation for the heated and prolonged argument with Ms. Gantt. *See* N.T. Trial, 12/5/18, at 299-30. Thus, Appellant's self-defense claim is predicated upon the sheer possibility that the victim was attempting to retrieve a gun from Ms. Gantt's car. *Id*. at 300 (stating that Appellant shot the victim when he reached the door of Ms. Gantt's car).

Appellant's testimony concerning the victim's alleged threats of violence are in direct conflict with the testimony of Ms. Gantt, who stated that the victim never threatened Appellant, and only ran towards a number of parked cars (including hers) once Appellant menaced him with the murder weapon. *See* N.T. Trial, 12/4/18, at 106-07, 112-13. Ms. Gantt's version of events was corroborated by the testimony of Mr. Perret, who also stated that Appellant was solely responsible for "escalating" the situation. *Id*. at 137-39. No firearm was ever found inside of Ms. Gantt's car.[6] *See* N.T. Trial, 12/5/18,

_____

[5] Tellingly, Appellant has not offered a detailed discussion of the legal contours of his justification defense. *See* 18 Pa.C.S. § 505.

[6] There was testimony at trial establishing that the victim sometimes carried a gun on his person. *See* N.T. Trial, 12/4/18, at 118, 141. In particular, Ms. Gantt and Mr. Perret testified that a gun "fell out" of the victim's backpack while all three of them were traveling in Ms. Gantt's car one day prior to the shooting. *Id*. at 151. Appellant testified that the victim had begun carrying a firearm in response to a separate incident several months prior to his death. *See* N.T. Trial, 12/5/18, at 300-02.

at 211-12. Appellant testified that he never saw the victim in possession of a handgun, or any other weapon, on the day of the shooting. *Id*. at 330. Overall, Appellant characterized his shooting of the victim as anticipatory. *Id*. at 332 ("I didn't know where he was running to. I didn't know if he had anything in his hands. I just know he went to the car after threatening me.").

In evaluating this case, we find the holding in ***Commonwealth v. Thornton***, 431 A.2d 248 (Pa. 1981), to be instructive. Mr. Thornton was accused of killing his common law brother-in-law as a result of a domestic dispute. Mr. Thornton admitted to killing his brother-in-law with a shotgun while he was sitting in the front seat of his car. Mr. Thornton claimed self-defense by arguing that he had killed the victim due to a belief that he "was going for his gun." *Id*. at 252. No weapon was located on or near the brother-in-law's body after the shooting. *Id*.

At trial, the Commonwealth erroneously adduced hearsay testimony establishing that the victim sometimes carried a handgun out of fear of Mr. Thornton. *Id*. at 250-51. On appeal, Mr. Thornton argued that the admission of this testimony was prejudicial and warranted a new trial because it was suggestive of Mr. Thornton's intent to kill. Our Supreme Court disagreed, concluding that "[t]he only evidence to support [Mr. Thornton's] theories of self-defense and provocation was his own self-serving testimony that he was "upset" . . . and that when he shot [his brother-in-law] he thought [his brother-in-law] 'was going for a gun.'" *Id*. at 252.

In light of the undisputed evidence that Mr. Thornton had shot the victim and the lack of any support for Mr. Thornton's theory of justification, our Supreme Court held that the error was harmless. *Id*. ("Given the overwhelming evidence of an intentional killing and the lack of support on this record for [A]ppellant's theories of self-defense and provocation, there is no reasonable possibility that the trial court's erroneous evidentiary ruling could have contributed to the jury's verdict.").

Turning to the facts of the instant case, Appellant's argument rings hollow in precisely the same way that Mr. Thornton's argument did. The only arguable support for Appellant's claim of self-defense is his own "self-serving" testimony. As in *Thornton*, Appellant's actions are not in reasonable dispute, and there is no credible evidence to support his self-defense claim. As such, any arguable prejudice arising from the admission of the shell casings and live ammunition pales significantly in comparison to the overwhelming and uncontradicted evidence of Appellant's guilt.

As such, Appellant's claim for relief is without merit. *Id*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/11/2020</u>