J-S48008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES SMITH | : | |
| | : | |
| Appellant | : | No. 988 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 21, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0007916-2015,
CP-51-CR-0007917-2015.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES SMITH | : | |
| | : | |
| Appellant | : | No. 989 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 21, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0007916-2015,
CP-51-CR-0007917-2015.

BEFORE:  KUNSELMAN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED:  MARCH 19, 2021**

In this consolidated appeal, James Smith appeals from the judgments

of sentence imposed following his convictions for rape, involuntary deviate

sexual intercourse ("IDSI"), and multiple other sex offenses against two minor

victims.[1]  We affirm.

The trial court summarized the relevant factual history as follows:

> Sometime in April 2015, A.P. & E.B, [ages] seventeen and twelve years old at the time, respectively, reported to the Philadelphia Police that their mother's godfather[,] James "Pop-Pop, Sporty" Smith had been sexually abusing one or both of them since 2011.
>
> [Smith], a 46-year-old man with a date of birth of September 30, 1968, began molesting E.B, a 10[-]year[-]old, in the fall of 2014.  In October or November 2014, [Smith] picked up E.B. and a few of her siblings from their grandmother's house, and took them grocery shopping.  E.B. and her siblings were living with their grandmother because their mother was in jail.  On the way to his home from the grocery store, [Smith] asked E.B if she wanted to play a guessing game involving a turkey baster.  The game involved putting different flavors into the baster and E.B. would have to guess what they were.  E.B. declined to play the game. When they arrived at [Smith's] home, he told E.B. to join him in the basement, and she obliged.  At this point, E.B was told to sit on a chair where she was blindfolded.  Next, [Smith] placed something in E.B.'s mouth.  E.B, described this thing as tasting sweet then having a strong flavor.  She felt something hard, and skin and hair around her mouth and the thing in her mouth moved back and forth.  After she tasted the strong flavor, this stopped, and the blindfold was removed.  [Smith's] denim pants were unzipped.  This was the first time [Smith] assaulted E.B. but not the last time.
>
> Later in the year, but prior to E.B.'s 11th birthday, she and her brother caught a bus from Reading, PA to visit [Smith] under the guise that he would buy her an iPad for her birthday.  [Smith] picked them up and took the children to get hoagies on the way to his house.  When they arrived, [Smith] instructed E.B. to take a shower and join him in his bedroom.  Wearing nothing but a towel, E.B. went to [Smith's] bedroom where she was instructed to lie on

_____

[1] *See* 18 Pa.C.S.A. §§ 3121(a)(1); 3123(a)(1), (b); 3124.1; 3126(a)(2), (7); 4304(a)(1); 6301(a)(1)(ii), (ii); 6318(a)(1).

the bed so that he may check her for bedbug bites. [Smith] held E.B.'s ankles and lifted her legs into the air leaving the towel to cover only the top half of her body. Although [Smith] did not touch E.B.'s genitalia at this point, he commented on her pretty private.

Sometime shortly thereafter, at an unknown time, following a snowfall and after E.B.'s 11th birthday, E.B., her mom, and younger siblings were all gathered at [Smith's] home. Under the guise of going to the store across the street, [Smith] took E.B. out the front door of his house and into the basement through the garage. Once again, E.B. was told to sit down, this time on the toilet, and again blindfolded. [Smith] proceeded to repeat his actions from the fall of 2014, and this time instructing E.B. to "rub the oranges." E.B. did not know what the oranges were, but described them as hard circles and she felt skin and hair around them. Once more, she felt something with the hair and skin in her mouth followed by a strong flavor. After the strong flavor, [Smith] stopped and removed E.B.'s blindfold. Prior to rejoining the family, [Smith] told E.B. not to tell her mom because it was "our game." It wasn't until April 2015, while at her Uncle Lance's house, did E.B. tell her mother what had happened.

When A.P. was 13 or 14 years old, [around 2012] her mother introduced her to [Smith] as a person who could get A.P. into modeling. [Smith] owned a hair salon and A.P. went to see him there to see if he could be of assistance to her. When she arrived at the salon, she was told come to the back where [Smith] measure[d] her breasts and then had her lower her jeans to measure her waist.

About a year or two later, A.P.'s mother picked her up from her cousin's house and together they went to [Smith's]. After eating dinner, A.P. was informed that she would be sleeping in the back room by herself, and her mother and younger sister would be sleeping in the front room. Later that evening, [Smith] woke up A.P. and instructed her to join him downstairs. [Smith] then informed A.P. that her mother had filled him in on her living situation, and the problems that A.P, was facing at her foster mother's house. It was at this point that [Smith] informed A.P. that he would take care of her if she took care of him. He proceeded to penetrate A.P. vaginally and then asked her to give him oral sex. A.P. did not refuse his advances because she was feeling very vulnerable and "was trying to survive." The sex was a regular thing.

When A.P.'s mom was incarcerated, she lived with [Smith], as she had no other choice. A.P. testified that "I was uncomfortable, but I didn't have any other options, so I made it work." During the following months, [Smith] had regular sexual intercourse with A.P., mostly in her room and mostly at night. [Smith] never used a condom and ejaculated in A.P. Often [Smith] would try to penetrate A.P. anally, which A.P. would decline. A.P. was reliant on [Smith] as he provided her with day-to-day living things, spending money, food, and car fare. Eventually A.P. got fed up and started saying no to [Smith]. In response, [Smith] stopped bringing her things and providing her with car fare, uniforms, and things for school. A.P. eventually moved out and told her friend Lisa about the abuse. Then one day in April 2015, whilst at her Uncle Lance's home, because of the situation with E.B. [A.P.] told her mother about the abuse.

Trial Court Opinion, 1/15/20, at 3-6 (citations to the record omitted).

Smith was arrested and charged at CP-51-CR-0007916-2015 for his sexual abuse of E.B., and at CP-51-CR-0007917-2015 for his sexual abuse of A.P. The cases were consolidated for trial. At the conclusion of trial, a jury convicted Smith of IDSI (with a child), unlawful contact with a minor (sexual offense), endangering the welfare of a child (by parent/guardian), corruption of minors (defendant over eighteen), and indecent assault (victim under thirteen) at CP-51-CR-0007916-2015 (E.B.). The same jury convicted Smith of rape (forcible compulsion), IDSI (forcible compulsion), unlawful contact with a minor, sexual assault, endangering the welfare of a child, corruption of minors (defendant over eighteen), and indecent assault (forcible compulsion) at CP-51-CR-0007917-2015 (A.P.).

On November 21, 2018, the trial court sentenced Smith to an aggregate prison term of thirty-nine to seventy-eight years for his offenses against E.B.

- 4 -

and A.P. Smith filed a post-sentence motion, which was denied by operation of law. Smith filed a timely notice of appeal at each docket, but listed both trial court docket numbers on each notice of appeal. Both Smith and the trial court complied with Pa.R.A.P. 1925.

Initially, this Court issued a rule to show cause at each case as to why the appeal should not be quashed in light of the Pennsylvania Supreme Court's holding on June 1, 2018, in **Commonwealth v. Walker,** 185 A.3d 969, 971 (Pa. 2018) (requiring a separate notice of appeal to be filed at each docket where a single order resolves issues arising on more than one docket); **see also** Pa.R.A.P. 341, Comment. Smith filed responses to the rules to show cause and later filed a motion to consolidate the appeals. On September 5, 2019, this Court issued a *per curiam* order which discharged the rule to show cause, and deferred the **Walker** issue to the merits panel to quash either or both of the appeals upon review. On September 6, 2019, this Court issued an order consolidating the appeals.

Smith raises the following issues for our review:

1. Did the [trial] court commit error by convicting [Smith] of [IDSI], unlawful contact, [EWC], corruption of a minor and indecent assault where the evidence at trial was insufficient to establish that [Smith] ever engaged in sexual intercourse with E.B.?

2. Did the court commit error by convicting [Smith] of rape, [IDSI], unlawful contact, sexual assault, [EWC], corruption of a minor and indecent assault when the evidence at trial was insufficient to establish that [Smith] ever engaged in forcible sexual intercourse or sexual contact with A.P.?

3. Did the court commit error when it disallowed Stephon Murke from testifying regarding bias of Commonwealth witness Renata Bell against [Smith]?

4. Did the court commit error when it disallowed Donnetta Heyward from testifying regarding the layout of [Smith's] house during the time that the alleged offenses took place?

5. Did the court commit error when it disallowed the jurors from taking notes when it was clear that the trial was going to last more than two days?

Smith's Brief at 2-3 (capitalization omitted).

Before we reach the merits of the issues Smith presents on appeal, we first must address whether Smith's notices of appeal complied with **Walker**. In **Walker**, our Supreme Court held prospectively that where, as here, a single order resolves issues arising on more than one docket, an appellant's failure to file a separate notice of appeal for each case will result in quashal.

In his responses to the rules to show cause, Smith indicates that he did file a separate notice of appeal at each docket. Response to Rule to Show Cause, 5/12/19, at 1 (unnumbered) (indicating that he filed the notices at different times on the same day, and attaching copies of the two notices of appeal which bear different time stamps). However, Smith concedes that his notices of appeal each contained two trial court docket numbers. *Id*.

Upon review of the record, we conclude Smith did indeed file two separate notices of appeal, as evidenced by the independent time stamps. *See Commonwealth v. Johnson*, 236 A.3d 63, 66 (Pa. Super. 2020) (*en banc*) (determining that time stamps in different locations and/or different

times of day indicate that separate notices of appeal were filed). Moreover, we need not quash based upon the listing of multiple docket numbers on each notice of appeal. ***See Commonwealth v. Johnson***, 236 A.3d 1141, 1148 (Pa. Super. 2020) (*en banc*) (holding that "[w]e should not invalidate an otherwise timely appeal based on the inclusion of multiple docket numbers, a practice that the Rules [of Appellate Procedure] themselves do not expressly forbid."). Having determined that Smith complied with ***Walker*** and Pa.R.A.P. 341, we may proceed.

In his first two issues, Smith challenges the sufficiency of the evidence supporting his convictions. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of

a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011).

Smith's first issue pertains to the sufficiency of the evidence supporting his convictions for sex crimes against E.B.; namely, IDSI (with a child), unlawful contact with a minor (sexual offense), endangering the welfare of a child (by parent/guardian), corruption of minors (defendant over eighteen), and indecent assault (victim under thirteen). All of these crimes were based on the fact that Smith engaged in oral sex with E.B., a preteen in his care, on two occasions. The crimes at issue are defined as follows.

A person commits IDSI with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age. ***See*** 18 Pa.C.S.A. § 3123(b).

A person is guilty of indecent assault when "the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and . . . the complainant is less than 13 years of age." 18 Pa.C.S.A § 3126(a)(7). Indecent contact is defined as

"touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire in any person." 18. Pa.C.S.A. § 3101.

The crime of endangering the welfare of a child is committed when "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1).

A person commits the offense of corruption of a minor when that person is an adult (age 18 or older) who "by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 . . .." 18 Pa.C.S.A § 6301(a)(1)(ii).

Finally, "[a] person commits [the] offense [of unlawful contact with a minor] if he is intentionally in contact with a minor . . . for the purpose of engaging in an activity prohibited under . . . Chapter 31 (relating to sexual offenses)." 18 Pa.C.S.A. § 6318(a)(1).

Smith does not dispute that, at the time of the alleged incidents, he was over eighteen years of age, E.B. was less than thirteen years of age, and E.B. was in his personal care. Smith argues, however, that the evidence was insufficient to prove that he engaged in sexual intercourse with E.B. because E.B. was the only witness who testified regarding the offenses, she delayed

one year before coming forward, she was unable to provide specific dates of the alleged incidents, and her testimony was not corroborated by other witnesses or by physical evidence. Smith points out that E.B. was blindfolded during the alleged incidents, and testified that she did not see what object was placed in her mouth or know what fluid was inserted into her mouth. According to Smith, the evidence shows only that he placed a blindfold on E.B. on two occasions and some type of fluid was inserted into her mouth. For these reasons, Smith argues that all of his convictions relating to E.B. should be reversed.

The trial court considered Smith's sufficiency claims as related to E.B. and determined that they lacked merit. The trial court reasoned:

> In the instant matter, it is well[-]established that [Smith] was over the age of 18 and E.B was under the age of 13 when [he] first forced E.B. to perform oral sex on him. E.B. very clearly, albeit with the use of descriptors, depicts the oral sex forced upon her by [Smith]. He blindfolded E.B. and put something hard in her mouth. She could feel skin and hair around her mouth. It tasted sweet and then had a strong flavor, and after the strong flavor [Smith] removed the blindfold and was standing there with his pants unzipped. The evidence presented was more than sufficient for the jury to interpret this as forced oral copulation with ejaculation . . ..

Trial Court Opinion, 1/15/20, 9-10 (references to the record omitted).[2]

_____

[2] The trial court also noted that Smith had indecent sexual contact with E.B. when he held her ankles and lifted them above her shoulders to view her naked body, and then told her that her "private" was "pretty." **See** Trial Court Opinion, 1/15/20, at 12 (*citing* **Commonwealth v. Capo**, 727 A.2d 1126 (Pa. Super. 1999) (holding that nonconsensual contact with the victim's back and

We discern no abuse of discretion by the trial court in rejecting Smith's sufficiency claims as related to his crimes against E.B.  As noted above, the Commonwealth may establish a defendant's guilt by means of wholly circumstantial evidence.  *Franklin*, 69 A.3d at 722.  Moreover, the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant.  *See* 18 Pa.C.S.A. § 3106 (providing that "[t]he testimony of a complainant need not be corroborated in [sexual assault] prosecutions"); *see also Commonwealth v. McDonough*, 96 A.3d 1067, 1069 (Pa. Super. 2006) (holding that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant).  Thus, the Commonwealth was not required to corroborate E.B.'s testimony with physical evidence or testimony from other witnesses.

Likewise, the fact that E.B. did not immediately report the sexual assaults is not a basis for finding the evidence insufficient.  *See* 18 Pa.C.S.A. § 3105 (providing that the complainant's failure to promptly report a sex crime does not preclude a defendant's conviction for the crime).  Rather, the lack of a prompt report is merely a factor to be considered by the jury in assessing the complainant's credibility.  *See Commonwealth v. Thomas*, 904 A.2d

---

shoulders, paired with kissing the victim's face with sexual motivation, was enough to sustain a conviction for indecent assault) and *Commonwealth v. Fisher*, 47 A.3d 155 (Pa. Super. 2012) (affirming that defendant engaged in indecent contact with a minor by licking the backs of her legs from her ankles to just under her buttocks)).

964, 970 (Pa. Super. 2006) (stating that "if a complaint is delayed substantially without any reasonable explanation, an inference can be drawn regarding the credibility of that complaint and against whether the incident in fact occurred"). Importantly, in the instant matter, the jury found E.B. credible, despite her delay in coming forward. We further note that the credibility of E.B. is irrelevant in a sufficiency review on appeal, because we view the record in the light most favorable to the verdict winner, which is the Commonwealth in this matter.

Additionally, the fact that E.B. may not have been able to identify the precise dates on which the assaults occurred does not render the evidence insufficient. The prosecution is required to fix the date on which an offense occurred with reasonable certainty so that the defendant is provided "with sufficient notice to meet the charges and prepare a defense." *Commonwealth v. Brooks*, 7 A.3d 852, 857-58 (Pa. Super. 2010). However, the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct, particularly in cases involving sexual offenses against children. *Id*. at 858.

Here, the evidence established that the first act of fellatio occurred in October of 2014, when E.B. was ten years old and while her mother was still in jail. *See* N.T., 9/13/18, at 43, 48, 70-71. The incident in which Smith claimed that he wanted to check E.B. for bedbug bites and told her that her

"private" was "pretty" occurred right before E.B. turned eleven, which was in mid-December of 2014. *See* N.T., 9/13/18, at 39, 49; 9/14/18, at 58-59, 115. The second act of fellatio occurred after E.B. turned eleven and before she revealed the abuse to her mother, which was in April of 2015. *See* N.T. 9/13/18, at 54-55; 9/14/18, at 57. Thus, while E.B. may not have been able to pinpoint the specific dates on which Smith abused her, the evidence sufficiently established the timeframe in which the acts occurred. *See Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa. Super. 2010) (holding that a minor victim's testimony that abuse occurred when she was between the ages of seven and eight and that it took place in the summer sufficiently established the dates of the crimes); *see also Commonwealth v. Luktisch*, 680 A.2d 877, 879-80 (Pa. Super. 1996) (holding that evidence indicating that rape of minor victim occurred sometime in the spring of a particular year sufficiently identified the date of the crime).

Finally, the testimony presented by E.B. was clearly sufficient to permit the jury to conclude that on two occasions Smith placed his penis in her mouth and moved it back and forth until he ejaculated inside of her. Thus, the trial court did not abuse its discretion in concluding that the evidence was sufficient to establish IDSI (with a child), unlawful contact with a minor (sexual offense), endangering the welfare of a child (by parent/guardian), corruption of minors (defendant over eighteen), and indecent assault (victim under thirteen) based on these sexual acts. *See Commonwealth v. Snyder*, 870 A.2d 336 (Pa.

- 13 -

Super. 2005) (holding that the evidence was sufficient to sustain defendant's convictions for IDSI, indecent assault, and corruption of minors where the preteen victim testified that defendant, among other things, made her suck on his penis until a "whitish liquid" came out). For these reasons, Smith's first issue warrants no relief.

Smith's second issue pertains to the sufficiency of the evidence supporting his convictions for sex crimes against A.P.; namely, rape (forcible compulsion), IDSI (forcible compulsion), unlawful contact with a minor, sexual assault, endangering the welfare of a child, corruption of minors (defendant over eighteen), and indecent assault (forcible compulsion). Each of these convictions was based on the fact that that Smith compelled A.P. to repeatedly engage in sexual intercourse with him and to perform oral sex on him. We employ the same standard of review as discussed above. The offenses at issue are defined as follows.

With respect to the crime of rape by forcible compulsion, "[a] person commits a felony of the first degree when the person engages in sexual intercourse with a complainant . . .[b]y forcible compulsion." 18 Pa.C.S.A. § 3121(a)(1).

A person commits IDSI by forcible compulsion, a felony of the first degree, "when the person engages in deviate sexual intercourse with a complainant . . . by forcible compulsion." 18 Pa.C.S.A. § 3123(a)(1).

The "forcible compulsion" necessary for these two crimes "includes not only physical force or violence but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." **Commonwealth v. Rhodes**, 510 A.2d 1217, 1226 (Pa. 1986). This "physical, intellectual, moral, emotional or psychological force," can be "either express or implied." 18 Pa.C.S.A. § 3101.  Factors relevant to whether forcible compulsion has occurred include:

> the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.

**Rhodes**, 510 A.2d at 1226.

A person commits sexual assault, a felony of the second degree, "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent."  18 Pa.C.S.A. § 3124.1. Because the element of forcible compulsion encompasses a lack of consent, sexual assault is a lesser-included offense of IDSI by forcible compulsion. **Commonwealth v. Buffington**, 828 A.2d 1024, 1031-32 (Pa. 2003).

"A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the

- 15 -

person or the complainant and . . . the person does so by forcible compulsion." 18 Pa.C.S.A. § 3126(a)(2).

As explained above, the crime of endangering the welfare of a child is committed when "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1).

As also explained above, a person commits the offense of corruption of a minor when that person is an adult (age 18 or older) who "by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree." 18 Pa.C.S.A § 6301(a)(1)(ii).

Finally, "[a] person commits [the] offense [of unlawful contact with a minor] if he is intentionally in contact with a minor . . . for the purpose of engaging in an activity prohibited under . . . Chapter 31 (relating to sexual offenses)." 18 Pa.C.S.A. § 6318(a)(1).

Smith argues that the evidence was insufficient to prove these crimes against A.P., because A.P., like E.B., was the only witness who testified regarding the offenses, she delayed one year before coming forward, she was

unable to provide specific dates of the alleged incidents, and her testimony was uncorroborated by other witnesses and by physical evidence. According to Smith, the evidence showed only that he allowed A.P. to stay in his home. For these reasons, Smith argues that his convictions relating to A.P. should be reversed.

The trial court considered Smith's sufficiency claims as related to A.P. and determined that they lacked merit. The trial court reasoned:

> [Smith] began raping A.P. when she was fifteen (15) years old. At that time, A.P., who had already been removed from her birth mother's care and was placed in foster care, was on the outs with her adoptive mother. [Smith], knowing full well about A.P.'s home and living situation took advantage of A.P, and began to rape her [and make her perform oral sex on him]. Soon thereafter, A.P.'s mother was incarcerated, and [Smith] assumed the role [of] guardian. [Smith] used A.P.'s precarious state of affairs and began to control her everyday life. He provided her with day[-]to[-]day necessities and gifts and withheld them when she finally stood up for herself. [Smith] forced A.P. into a *quid pro quo* "relationship." He used the threat of withholding basic necessities such as food and housing to continue the abusive relationship. It is this type of psychological force that the [Pennsylvania] Supreme Court articulated as forcible compulsion in ***Rhodes***.

Trial Court Opinion, 1/15/20, 8-9, 10, 11 (citations, references to the record, and unnecessary capitalization omitted).

We discern no abuse of discretion by the trial court in rejecting Smith's sufficiency claims as related to A.P. The evidence, when viewed in the light most favorable to the Commonwealth, established that Smith engaged in sexual intercourse with A.P., both vaginally and orally, on multiple occasions, and that he used his dominant position and A.P.'s vulnerability and isolation

to compel her to engage in those sex acts against her will. Accordingly, the evidence was sufficient to sustain Smith's convictions for rape (forcible compulsion), IDSI (forcible compulsion), unlawful contact with a minor, sexual assault, endangering the welfare of a child, corruption of minors (defendant over eighteen), and indecent assault (forcible compulsion). **See** **Commonwealth v. Dorman**, 547 A.2d 757, 761-62 (Pa. Super. 1982) (holding that the evidence was sufficient to sustain defendant's conviction of rape by forcible compulsion where the 38-year-old drove his teenage niece to a secluded area, proceeded to have sex with her even though she said "don't," where defendant occupied a position of authority and trust such that the victim would feel coerced to submit to his demands out of a sense of duty or obedience).

Furthermore, as explained above with respect to E.B., the Commonwealth was not required to corroborate A.P.'s testimony concerning Smith's sexual abuse, and A.P.'s delay in coming forward was a factor to be considered by the jury in assessing her credibility rather than a matter of sufficiency. **See** 18 Pa.C.S.A. §§ 3105, 3106.

Additionally, while A.P. did not identify the specific dates when each of the assaults occurred, she testified that the first one happened the night be-fore her mother reported to jail, which was in mid-July of 2014, and that the assaults continued multiple times each week throughout the summer. **See** N.T., 9/13/18, at 116, 120-21; 9/14/18, at 55). This timeframe was specific

enough to provide Smith with adequate notice of the dates of the incidents.[3]

Accordingly, as the evidence was sufficient to sustain each of Smith's convictions for sex crimes against A.P., his second issue merits no relief.

In his third issue, Smith submits that the trial court erred when it disallowed Stephon Murke from testifying regarding Commonwealth witness Renata Bell's bias against Smith. Our standard of review is as follows:

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Benvenisti-Zarom*, 229 A.3d 14, 25 (Pa. Super. 2020) (citation omitted).

Further, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. However, "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

---

[3] Notably, Smith conceded that A.P. lived with him during the specified time period. *See* N.T. 9/24/18, 143-45, 149-50. Thus, even if the timeframe established by A.P. was somehow insufficient, Smith was not prejudiced in his ability to present a defense. *See Commonwealth v. Brooks*, *supra*.

Relevant evidence may also be excluded if it constitutes inadmissible hearsay. ***Commonwealth v. King***, 959 A.2d 405, 412 (Pa. Super. 2008) (holding that relevant evidence may nevertheless be inadmissible if it violates a rule of competency, such as the hearsay rule). Hearsay means "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Hearsay is not admissible except as provided by our Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. Thus, an out of court declaration offered for its substantive truth, even if relevant, is nevertheless incompetent and hence inadmissible hearsay if it does not fall within any exception. ***See Commonwealth v. Thornton***, 431 A.2d 248, 251 (Pa. 1981).

Smith claims that he attempted to call Murke as a fact witness to testify that Renata Bell, the mother of E.B. and A.P., conspired with Demetrius Hall to get her daughters to fabricate allegations of sexual misconduct against Smith. Smith maintains that Hall and Bell took this action in response to Smith's discovery that Hall had stolen money from Smith. Smith asserts that the trial court erred by sustaining the Commonwealth's objection to Murke's testimony on the grounds of hearsay and relevancy. Smith maintains that Murke's testimony would have been relevant since it would have given Bell a motive to lie and to urge E.B. and A.P. to fabricate the allegations of sexual

misconduct. Smith further claims that Murke's testimony would have supported his theory that Bell conspired to pressure E.B. and A.P., which would have made their allegations against him less believable.

While Smith concedes that the trial court disallowed Murke's testimony based on both relevancy and hearsay, Smith only addresses the relevancy aspect of the trial court's ruling. Importantly, as noted above, relevant evidence may be excluded if it constitutes inadmissible hearsay. *See King*, 959 A.2d at 412; *Thornton*, 431 A.2d at 251.

Our review of the record indicates that the trial court requested an offer of proof from Smith as to Murke's proposed trial testimony.[4] After Smith provided that offer of proof, the trial court expressed its concerns that Murke was not a fact witness to any matter before the court, and further that Murke was "going to testify to a lot of hearsay." N.T., 9/18/18, at 111. Smith did not object the trial court's assessment, and did not identify any exception to the hearsay rule that might apply. *Id*. Instead, he stated in response to the trial court's statement, "O.K. No problem. I have to go off of me then." *Id*. Even now, on appeal, Smith does not dispute the trial court's characterization of Murke's proposed testimony as hearsay, and does not identify any purported exception to the hearsay rule.

_____

[4] We note that Smith was represented by counsel at the outset of his trial, but on day two of trial, he chose to represent himself. Thus, he was proceeding as his own lawyer at this point of the litigation. We further note that Smith is represented by counsel in this appeal.

More importantly, however, Smith did not preserve this issue for our review. In order to preserve a claim for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court, or the claim is waived. ***See Commonwealth v. Russell***, 209 A.3d 419, 429 (Pa. Super. 2019). Here, Smith did not object to the trial court's hearsay ruling. As such, he has waived any challenge to that ruling on appeal. ***See*** Pa.R.A.P. 302(a) (providing that issues not raised in the court below are waived and cannot be raised for the first time on appeal); ***see also Commonwealth v. Colon***, 846 A.2d 747, 752-53 (Pa. Super. 2004) (holding that the defendant waived his claim regarding the trial court's evidentiary ruling where he acceded to the ruling when it was made). Thus, Smith's third issue warrants no relief.

In his fourth issue, Smith contends that the trial court erred when it disallowed him from calling Donnetta Hayward to testify regarding the layout of his home at the time of the alleged incidents. In addressing this admissibility of evidence issue, we employ the same standard of review as discussed above.

Smith claims that he attempted to call Hayward as both a character witness and as a fact witness. Smith wanted Hayward to testify as a fact witness regarding the layout of his house and furniture in the house that would make the Commonwealth's case less believable. Smith argues that the trial court erred in sustaining the Commonwealth's objection on the basis that her

proposed factual testimony would be cumulative since earlier defense witnesses, Shannon Banks and Betty Ricks, had given testimony regarding the absence of a bench in the living room.

Smith maintains that Hayward's proposed testimony would not have been cumulative because she would have been able to describe Smith's house at the time of certain of the alleged incidents; namely, the summer of 2014. Smith points out that Banks admitted on cross-examination that she had not been to Smith's house before 2015. While Smith concedes that Ricks was able testify that she observed the layout of his house during this time period, she admitted on cross-examination that she suffered from vision impairment, rendering her testimony less compelling. On these bases, Smith argues that Hayward's proposed testimony was different and more relevant than the testimony provided by Banks and Ricks regarding the layout of Smith's house.

Our review of the record reflects that, when Smith sought to call Hayward as a witness, the trial court requested an offer of proof.[5] Smith responded as follows:

> Offer of proof is she lived in the residence prior to 2014 and has been at the residence after 2014, and I would like for her to verify the contents that is in the photographs and the layout of the house. That's it. Then I will do character, Your Honor. But I did give her. She is on my list.

_____

[5] The trial court also noted that Smith failed to disclose the identity of Hayward prior to trial, in violation of Pa.R.Crim.P. 573(c)(1)(b). The Court and the Commonwealth were unaware that Smith intended to call Hayward as a witness up until up until the point when he called her to the witness stand. **See** Trial Court Opinion, 1/15/20, at 19.

- 23 -

N.T., 9/20/18, at 16.

Here, Smith indicated that he wanted Hayward to testify regarding the layout of his house and to verify the photographs depicting its contents. However, a literal reading of his offer of proof indicates that, although Hayward resided in Smith's home **before** 2014, and visited the home **after** 2014, she did not visit the home at any time in 2014, when most of the abuse took place.

Even assuming that Smith's intended proffer was that Hayward had been to the home in 2014, several other witnesses had already testified as to the layout of the home and the contents therein within that timeframe. Smith's home healthcare worker, Kimberly Robinson, and Smith's girlfriend, Angel Miller, were regularly in the house in 2014, and testified regarding the layout of Smith's home and the photographs depicting it. **See** N.T., 9/20/18, at 27-29, 30-32; 9/24/18, at 29-30, 32-39, 42-46, 56. Finally, Smith himself took the witness stand and testified regarding the photographs and the home's layout. **See** N.T., 9/24/18, at 96; 9/25/18, at 14. Thus, even if Banks had not been to the home before 2015 and Ricks had vision problems, the proposed testimony of Hayward still would have been cumulative to the testimony of Robinson, Miller, and Smith himself, who resided in the home throughout the relevant time period. Accordingly, Smith's fourth issue merits no relief.

In his final issue, Smith contends that the trial court erred in disallowing the jurors from taking notes during the trial based on its determination that the trial would be short. Smith points to Pennsylvania Rule of Criminal Procedure 644, which governs the taking of notes by jurors and provides that, "[w]hen a jury trial is expected to last for more than two days, jurors shall be permitted to take notes during the trial for their use during deliberations. When the trial is expected to last two days or less, the judge may permit the jurors to take notes." Pa.R.Crim.P. 644(A).

Smith argues that the trial court could not have reasonably anticipated that the trial would be concluded within two days or less. He points out that the trial involved two complainants and fourteen separate criminal charges. Smith further points out that the Commonwealth called E.B., A.P., and several other witnesses, and Smith called several defense witnesses to testify on his behalf. Smith maintains that the jury heard testimony on seven separate days, and did not begin deliberations until thirteen days after the trial began. He argues that allowing the jurors to take notes would have been valuable to helping them to refresh their memory and focus their concentration.

Here, the record reflects that the trial court indicated on the first day of trial that the jurors were not going to be allowed to take notes because "[t]his is a short case." *See* N.T., 9/13/18, at 21. Defense counsel agreed that the case was going to be "relatively short." *Id.* at 32. Smith did not object to the

trial court's assessment that the trial would be short, or its decision to preclude notetaking by the jurors.[6]

Nevertheless, on the third day of trial, Smith asked the court to permit the jurors to take notes. **See** N.T., 9/17/18, at 8-9, 15. At that point, E.B., A.P., and their mother had already completed their testimony. The trial court rejected Smith's untimely request to allow notetaking. As the court explained, "[w]e did not begin note taking at the beginning of this trial so there will be no note taking mid-trial either." **Id**. at 15.

Because Smith did not timely ask the court to allow notetaking, and did not object at the beginning of trial when the trial court initially stated that notetaking would be disallowed, his claim that the court should have permitted notetaking is waived. **See Russell**, 209 A.3d at 429.[7]

_____

[6] At the state of his trial, Smith was represented by counsel; as mentioned above he decided to represent himself on the second day of trial.

[7] Even if Smith's claim had been preserved for our review, we would had concluded that it lacked merit. The operative language in Rule 644 concern's the trial court's pretrial expectation regarding the length of the proceeding. Our review of the record indicates that the trial lasted more than two days due to numerous delays which could not have reasonably been anticipated by the trial court. For example, Smith's decision to proceed *pro se* on the second day of trial required the trial court to take frequent breaks from the testimony to ensure that Smith understood his rights, and to explain to him proper court procedures. **See** Trial Court Opinion, 1/15/20, at 21. During trial, Smith announced that he had gone on a "medication strike" because he was unhappy with the court's rulings, and threatened to add a "hunger strike" to his "medication strike" if the court continued to rule against him. Smith subsequently suffered some type of medical emergency during the course of his trial, purportedly due to his "medication strike," and the proceedings had

As none of Smith's claims merit relief, we affirm the judgment of sentence.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/19/21

_____

to be suspended for a day and a half, plus the following weekend, due to his hospitalization. *Id*. at n3.